MONROE GENERAL TERM, January, 1849.   *Maynard, Welles, and Selden,* Justices.

## THE PEOPLE *vs.* HOVEY.

After the dissolution of a marriage, for adultery, the marriage contract is at an end, and the relation of husband and wife no longer exists between the parties; and if the guilty party marries again, he is not within the penalty of the act against bigamy.

But the second marriage being absolutely prohibited by the 47th section of the act concerning divorce, is punishable as a misdemenor, under the 45th section of the title of the revised statutes, relative to misdemeanors.

DEMURRER to the plea of the defendant. The defendant was indicted in the county of Monroe, for bigamy. He pleaded to the indictment, admitting both marriages, but setting up in his defence a decree of the court of chancery, dissolving the marriage with his first wife, obtained upon a bill filed by her, charging *him* with adultery. The decree was in the usual form. It dissolved the marriage, and declared " that the parties and *each* of *them,* are freed from the obligations thereof." It also contained a clause prohibiting the defendant from marrying again. To this plea the district attorney demurred, and the defendant joined in demurrer. The court of oyer and terminer sustained the demurrer, and the cause was brought into this court by writ of error.

*W. S. Bishop,* (district attorney,) for the people.

*J. C. Chumasero & O. Hastings,* for the defendant.

*By the Court,* SELDEN, J. The question presented is, whether, in case of a dissolution of marriage for adultery, the party charged with the offence, if he or she marries again, is within the penalty of the act against bigamy, (2 *R. S. 2d ed. p.* 573, § 8.) This section provides that " every person having a husband or wife living, who shall marry any other person," shall be adjudged guilty of bigamy. Can the defendant, after the

decree dissolving his marriage with his first wife for his own adultery, be said to have had a *wife* living? This is the whole question.

The terms husband and wife have a very definite and precise meaning. They are descriptive of persons who are connected together by the marriage tie, and are significant of those mutual rights and obligations which flow from the marriage contract. Until those obligations are assumed there is no *wife*, and the term is then applied, not merely to describe a woman who has been married, but as expressive of the relations existing between her and her husband. So long as that relation continues, she is properly a wife; when that ceases, the term is no longer applicable. The decree dissolves the marriage, and declares that each party is freed from its obligations. The marriage contract therefore is at an end: not only the complainant in the chancery suit but the defendant also, is absolved from all the obligations arising out of *that contract*. The relation of the parties, consisting in their mutual rights and duties, no longer exists; and it would seem to follow, that the words husband and wife, used to describe that relation, have ceased to be applicable. Certainly the former *wife*, as to whom the dissolution of the marriage is entirely unlimited, cannot be said after this decree to have had a *husband* living; for she might marry again, and thus, if that were so, have two lawful husbands at the same time. But husband and wife are correlative terms, so defined by lexicographers, which implies that whenever one can be properly applied, there must be a person to whom the corresponding term is applicable. If, therefore, the defendant is no longer the *husband* of his former wife, then she is no longer his *wife*.

It was urged, upon the argument, that while the dissolution of the marriage by the decree was total and absolute on the part of the complainant, it was only partial as to the defendant, who remained subject to a portion of the restraints arising from the marriage contract. In answer to this it may be said, that the obligations of the marriage relation are mutual; that the abrogation of them on one side, necessarily involves their anni-

hilation upon the other; and accordingly the decree itself provides, that *each party* is freed from those obligations. The restraint of the defendant as to a second marriage, arises not out of the marriage contract, or from any continuing obligations to his former wife, but exclusively from the positive prohibition of the statute.

This was virtually decided in the case of the *Commonwealth of Mass.* v. *Putnam,* (1 *Pick.* 36.) The court there held, that under the statute of that state, which is similar to ours, a divorce for adultery was *total* and not partial as to the *guilty party;* and that consequently he no longer could be said to be "a married man" within their statute against adultery; and although the court there intimated that the defendant might be convicted under the statute of Massachusetts against bigamy, yet it will be observed that in that statute the words "husband and wife" are preceded by the word "former," which is omitted in ours.

Did the section already cited, therefore, stand by itself, unconnected with any other section or statute, I should have little difficulty in coming to the conclusion that this case does not fall within it. But the 3d subdivision of the next section of the act, (2 *R. S. 2d ed. p.* 573, § 9,) provides that section eight shall not extend to any person by reason of any former marriage which shall have been dissolved by the decree of a competent court, for some cause other than the adultery of such person. The district attorney relies upon this subdivision as controlling the construction of the preceding section, and showing that the legislature must have intended that the section in question should extend to cases like the present. The same exception, in substance, is contained in the 4th section of the article on marriage, (*Id. p.* 74,) the object of which is to declare void marriages which the 8th section of the act against polygamy is designed to punish.

It will be observed that the 4th section, here referred to, prefixes the word *former* to the terms husband and wife, while the 8th section of the bigamy act entirely omits it. The 4th section of the article on marriage reads thus: "No second or other subsequent marriage shall be contracted by any person

during the life of any *former* husband or wife of such person," unless, 1. "The marriage with such former husband or wife shall have been annulled or dissolved for some reason other than the adultery of such person." It is obvious that it is the use of the word *former* in this section, which renders the exception necessary. No one would contend, if that word had been omitted, that the section would include the case excepted. It follows from this, that the only object of inserting the word *former* in this section, must have been to embrace the case of persons divorced for their own adultery. If that word was necessary for that purpose in this section, why was it not equally so in the 8th section of the bigamy act; and what is to be inferred from its omission in the latter?

It was held in *Mosa* v. *Newman*, (6 *Bing*. 567,) that when in several statutes *in pari materia*, the legislature is found sometimes omitting and sometimes inserting a clause of relation, it is to be presumed that their attention has been drawn to the point, and that the omission is designed; and in *Rex* v. *Kone*, (6 *East*, 518,) Lord Ellenborough, in applying this rule, says: "It seems as if the omission were intentional, but if it were not intended, we can only say of the legislature, *quod voluit non dixit*." It is worthy of remark, too, that the statute against bigamy, passed in the reign of James I. as well as our own statute in existence prior to the passing of the present act, contained the word "former," as a prefix to the terms husband and wife. (1 *Hale's Pleas of the Crown*, 692. 1 *R. L.* 113.) The same is true, as before observed, of the statutes of Massachusetts. (1 *Pick.* 136.) If this does not prove that the word was omitted in our statute, by design, it goes strongly to show that it has heretofore been considered an important and significant word.

Independent therefore of the 3d subdivision of section 9, before referred to, not only the language used in section 8, but its comparison with other statutes *in pari materia*, as well as the history of legislation on the subject, all unite to sustain the construction contended for by the defendant. Should then that subdivision have the effect to extend the provisions of section 8,

The People *v.* Hovey.

to a case otherwise not within it? This subdivision contains, in form, an exception to the enactment in section 8. The office of an exception is to curtail and limit the operation of the enacting clause, and it could rarely, if ever, be properly regarded as extending it, where the terms of the enactment itself are clear and explicit; although it may be resorted to for the purpose of explaining an enactment otherwise ambiguous. The inference drawn from subdivision 3 of section 9, as to the intention of the legislature, is met by the contrary inference to be derived from the omission of the word *former*, contained in all previous statutes on the same subject.

It is said to be a safe method of interpreting statutes, to give effect to the particular words of the enacting clauses. (*Dwar. on Stat.* 906.) This rule, so salutary in all cases, should be adhered to with peculiar strictness, in cases like the present, upon the familiar principle that statutes which are highly penal in their nature should always be strictly construed *in favorem vitæ et libertatis.*

Independently of the statute against bigamy, our laws impose severe penalties upon the act charged against the defendant in this case. The 4th section of the article on marriage, before referred to, (2 *R. S. 2d ed.* 74,) makes the marriage void, thus subjecting the offender to the painful consequences of public disgrace, illegitimacy of children, &c. In addition to this, such a marriage being absolutely prohibited by the 47th section of the act concerning divorce, (2 *R. S. 2d ed. p.* 80,) is punishable as a misdemeanor by the act, 2 *R. S. 2d ed. p.* 582, § 45.

The defendant, therefore, will not necessarily go unpunished, although he may escape the penalty of the act against bigamy. The judgment of the court of oyer and terminer must be reversed.