## UNITED STATES v. U. A. MURDOCK.

·The proceeding by attachment is merely an incident to the main action ; a conservative process provided by law in aid of and to protect the creditor's rights, under certain circumstances, in a suit against the debtor, and, as such, has long been known to and exercised under the common law.

'The right of the United States to sue in our Courts, cannot now be considered an open question, a doubt could have ever existed.

·As a general rule, the Government of the United States, in its proceedings in its own Courts, and the Courts of the States to which in civil actions it may resort, can only act through its offices and officers established by law, and that it is made the duty of the District Attorney, in each District, under the superintendence of the Treasury Department, to prosecute all civil actions in which the United States shall be concerned.

'The Government, as a sovereign, cannot be sued in State Courts.

The acknowledgment of the right of the Government to come into our Courts, and its immunity from suit, by virtue of sovereignty, carries with it the right to the use, in its sovereign capacity, of all the conservatory writs, common to other suitors.

·The writ of attachment can issue, under certain circumstances, from our Courts, at the suit of any creditor against the debtor, who resides out of the State, and with reference to the property within the jurisdiction of the Court.

As long as the debtor can control his property it is subject to attachment by his creditors.

An action of debt lies against the importer to recover the duties on goods imported by him.

The taking of additional securities does not relieve him from his personal liability; nor will the unauthorized and illegal removal of the goods from the custody of the custom-house officers discharge him.

A verdict in the Court below will be set aside when contrary to law, in civil cases.

A creditor, his agent or attorney in fact, praying attachment, must, besides, annex to his petition his obligation in favor of the defendant for a sum exceeding one-half that which he claims, with the surety of one good and solvent person residing within the jurisdiction of the Court to which the petition is presented, as a security for the payment of such damages as such defendant may recover against him, in case it should be decided that the attachment was wrongfully obtained.

A judicial surety cannot demand the discussion of the property of the principal debtor.

APPEAL from the Fourth District Court of New Orleans, *Price*, J. *Henry C. Miller*, for the United States. *T. J. Semmes*, for plaintiff and appellant. *C. B. Singleton*, Curator ad hoc. *Bonford, Singleton & Clack*, and *Adams & Hays*, for the Mississippi Railroad Company.

HOWELL, J. The United States, through their law officer, instituted suit by attachment on the 14th June, 1858, in the Fourth District Court of New Orleans, against U. A. Murdock, a resident of New York, to recover $21,162 60, amount of the duties on two cargoes of railroad iron, imported by him into this port in February and April, 1856, which iron was stored in a bonded warehouse here, and fraudulently and illegally removed therefrom in January, 1857, by Thomas J. Casey, the keeper of said warehouse, without the payment of the duties claimed.

The attachment was levied upon two other cargoes of iron subsequently imported by the defendant, and held at the time by the Collector of the Port.

A rule was taken by the curator ad hoc, appointed to represent the absent defendant, to set aside the attachment on various grounds, which being dismissed, an answer was filed denying generally the allegations of the

20

petition, and specially any personal liability; averring that the debt was *in rem;* that the delivery of the iron by the Government officers, without requiring the payment of the duties was a forfeiture of the same; that the defendant sold said iron to the Mississippi Central Railroad Company, which undertook as a part of the price to pay the duties and the delivery without collecting said duties, was an extinguishment of any claim against defendant.

The Mississippi Central Railroad Company intervened, and merely claimed the two cargoes of iron, which were attached in this suit, by virtue of a sale prior to the attachment; yet, in the Court below, and in this, it has contested the plaintiff's right to recover against the defendant.

The case was twice tried by a jury.  On the first trial, a verdict was rendered in favor of plaintiff without privilege on the property attached, and on the second, verdict and judgment were in favor of the intervenor, and the plaintiff appealed.

Our attention is necessarily called, first to the rule to set aside the attachment, the grounds of which we will notice as presented in the brief filed by the curator ad hoc.

1. The United States cannot come into the State Courts as plaintiff, except in suits at *common law,* and that the proceeding by attachment was unknown to the common law.

We think the limitation attempted here to be given to the expression, " suits at common law," would effect too much, and would exclude the United States from suits at *civil law,* which, as a system, is distinct from the common law, and hence there would be but few cases in which they could appear in the Courts of this State.

We consider, however, that the proceeding by attachment is merely an incident to the main action of a suit; a conservative process provided by law in aid of and  to protect the creditor's rights, under certain circumstances, in a suit against the debtor, and as such has long been known to and exercised under the common law.

The right of the United States to sue in our Courts, cannot now be considered an  open question, if a doubt could ever have existed.  See 305, 733; 4 N. S. 317; 5 N.  S.  567; 5 R. 120; 8 R. 262; 11 R. 418; 7 A. 185, and in the exercise of such right they can avail themselves of the remedies common to all suitors.  It would seem anomolous that the Government, under the ægis of which all our laws are enacted and our Courts established, should be excluded from those Courts.

2 and 4. If the United States can sue by attachment, they must conform to all the rules and requisites in such proceeding as private suitors; and in this connection it is contended that the general authority of the District Attorney is insufficient to enable him to observe the pre-requisites of the writ prescribed in behalf of the debtor, and the remedy being a harsh one, cannot be exercised without their observance, even by the United

States, and we are referred to authorities in support of these positions, which, in our opinion, do not meet the point really presented.

In the case of the *United States* v. *Smith*, 7 A. 185, which was an injunction suit, in which an agent made the affidavit required in such cases, it was said by the Court that the agent was not authorized; that, as a general rule, the Government of the United States, in its proceedings in its own Courts and the Courts of the States to which in civil actions it may resort, can only act through its offices and officers established by law, and that it is made the duty of the District Attorney, in each district, under the superintendence of the Treasury Department, to prosecute all civil actions in which the United States shall be concerned. Gordon's Digest, Articles 374, 375, 1095.

In this case the District Attorney took the oath prescribed by the Code of Practice, and gave a bond, which it is conceded is not binding; but he contends that it is a vain thing and without effect, as the Government, by prerogative, is exempt from such obligation, and no action of an officer can waive such prerogative; in which view we concur.

The Government, as sovereign, cannot be sued, and being established for the protection and benefit alike of all its citizens, it is not to be presumed that it will seek to oppress any. Its authority and powers are exerted in the persons of its citizens, whose duty it is, in their official functions, to respect and save the rights of their fellow-citizens, as well as to secure the rights of the Government. Each citizen has ample protection in the very nature of our institutions and laws.

The acknowledgment of the right of the Government to come into our Courts, and its immunity from suit by virtue of sovereignty, carries with it the right to the use, *in its sovereign capacity*, of all the conservatory writs common to other suitors.

And, besides, it would be requiring a vain and useless thing, as no bond could be enforced against the United States.

3. The property in question being in the possession of an officer of the United States, as such, cannot be attached by an officer of the State Court, without an act of Congress authorizing it.

To this, it is correctly answered, that the rule invoked is established solely in the interest of the United States, to preserve their rights upon such property, and does not apply where the Government is itself the attaching creditor.

The argument that attachments are designed to aid creditors, whose debtors are absent and cannot be cited, and that therefore the United States cannot resort to that proceeding in this case, because the defendant is a citizen of the United States, and subject to citation in New York, where he resides, has no force in it.

The writ of attachment can issue, under certain circumstances, from our Courts at the suit of any creditor against the debtor who resides out of the State, and with reference to the property within the jurisdiction

of the Court. It not unfrequently happens that a resident of one State brings a resident of the same State (and it may be of the same jurisdiction) into our Courts by the process of attachment. It is not the jurisdiction of the United States, as a Government, that is to be considered in determining the right to the suit, but whether or not the debtor is in such position, and the facts such as to authorize the process.

We conclude, therefore, that the plaintiff and defendant (who is represented by a curator ad hoc) are rightly before the Court, if it appear that the property attached belongs to the defendant, or is under his control as owner.

This fact is contested by the Mississippi Central Railroad Company, which claims to be the owner thereof by right of purchase, and introduces in evidence two bills of sale of said property, then in warehouse in this port, of the 14th and 27th April, 1858, from P. Chontean, Jr., Sandford & Co., of New York, of which firm it is shown the defendant is a member. By these bills the purchaser, as part of the price, was to pay the duties in favor of the Government.

The question is presented: was there a delivery, actual or constructive, of this property, prior to the levying of the writ of attachment?

To solve this enquiry, the counsel for the intervenor relies upon a question of law rather than of fact, and argues that, by the laws of New York, it is unnecessary to make a delivery in the sale of movable property, and, consequently, the sale of the iron in controversy was complete before the attempted attachment.

Admitting this to be the law of New York (which is not before us), it appears from the evidence that, at the date of the attachment, the duties on said iron were not paid, and by the laws of Congress no delivery can be effected until the duties are paid. Act 2d March, 1799, § 62. In reply to this, it is urged that this applies to the specific article on which the duty is imposed, and as no claim is made for the duties on this iron attached, it does not interrupt or prevent the constructive delivery. In our opinion, it is immaterial for what object the law is thus enacted; it is the effect to which we are to look. The transfer is suspended, and the delivery impracticable. It is clear that, up to the payment of the duties, or at least notice to the proper officer of the port, the defendant might have himself withdrawn, or authorized another vendor to withdraw the property, upon paying the duties, and hence the application of the principle of our own law that, as long as the debtor can control his property, it is subject to attachment by his creditors.

We cannot resist the conclusion that the property was legally attached in this suit.

Upon the merits, as between the plaintiff and defendant, we find no difficulty.

An action of debt lies against the importer to recover the duties on goods imported by him. 1 Mason, 42; 13 Peters, 487. The taking of

additional securities does not relieve him from his personal liability; nor will the unauthorized and illegal removal of the goods from the custody of the custom-house officers discharge him.

We are satisfied that the defendant, U. A. Murdock, imported the iron for which the duties are herein claimed; that the transmission of the funds by the intervenor to Thos. J. Casey, the keeper of the warehouse, to pay the duties, is not binding on the United States; that the entry in his account-current with the intervenor, of the payment of the duties, is no proof against plaintiff; that the said iron was surreptitiously withdrawn and delivered to the intervenor, without the payment of the duties thereon; and that the plaintiff are entitled to recover.

We do not feel embarrassed by the verdict of the jury, as the question of delivery in this case is resolved by one of law rather than of fact.

It is therefore ordered, adjudged and decreed, that the judgment of the lower Court be reversed, and the verdict of the jury be set aside; it is further ordered, that the intervention of the Mississippi Central Rail Road Company be dismissed, with costs; and it is further ordered that the United States recover of defendant, U. A. Murdock, the sum of twenty-one thousand one hundred and sixty-two dollars and sixty cents, with five per cent. interest from 1st January, 1857, and costs in both Courts, and with privilege on the property attached.

HYMAN, C. J. The law of the State requires that a creditor, when he pursues his debtor by the conservatory process of attachment, shall give, before the process issues his obligation with the surety of one good and solvent person, as a security for such damages as his debtor may recover against him, in case it should be decided that the attachment was wrongfully obtained. See C. P. 245.

No creditor by our law is exempt from this pre-requisite, in procuring such writ.

I know of no provision of the Constitution of the United States that gives the Government of the United States of America the prerogative of suing in the Courts of the State, without complying with the requisites presented by the State for suitors in her Courts; and I know of no authority in the Government of the United States, except that which is derived from its Constitution.

The maxim : "Lex nemmem cogit ad vana," is not applicable to this case.

True, it is, that defendant cannot sue the Government of the United States without its permission, but it does not follow from this hindrance that the Government could not have bound itself to him in its obligation, or that he may not have a just claim of damages against the Government for the wrongful issuance of the writ of attachment. It is my opinion that the Government could have so bound itself that he may have such claim, and that he can enforce it against the person whom the Government

has given as its security, without being required to sue the Government. See C. C. 3035.

Are all the obligations issued by the Government to its citizens for money borrowed by it of them not obligations, not binding, but vain acts, because the citizen cannot sue the Government ?

If the Government could bind itself on these written obligations, there seems to be no reason why it could not also bind itself on a written obligation to pay a citizen damages, if it should be established that he had been wrongfully pursued by the Government in a suit against him.

I think the attachment should be dissolved. The plaintiff has not furnished the bond and security required by law.