In the Matter of the Estate of ELISHA W. ENSIGN, deceased.

A divorced wife, whether the divorce was granted because of the miscon-
duct of herself or her husband, is not entitled, if he die intestate, to
administration, or to a distributive share of his personal estate.

The provision of the Revised Statutes (2 R. S. 146, § 48), providing that if
the divorce was granted because of the misconduct of the wife, she shall
not be entitled "to any distributive share of his personal estate," is need-
less and superfluous.

(Argued June 17, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme
Court, in the fifth judicial department, entered upon an order
made the first Tuesday of June, 1886, which affirmed a decree
of the surrogate of the county of Erie dismissing the petition
of Jennie Ensign Martin, which asked to have set aside the
probate of the will of Elisha W. Ensign, deceased, and ratify-
ing and confirming the decree admitting the will to probate.

It appeared that the deceased and the petitioner were mar-
ried in 1867, and lived together as man and wife until 1875;
that a child was born of said marriage in 1869, which died soon
after; that in December, 1875, a decree of divorce was granted,
in an action brought by her against her husband, because of
adultery, on his part, and in 1877 she married again. The will,
which was admitted to probate, was executed before their mar-
riage. No citation or notice of the probate proceedings was
served upon or given to the petitioner. The petitioner claimed
that the will was void because of the subsequent marriage and
birth of issue, and that she as "widow" was entitled to a dis-
tributive share in his personal estate, and to notice of the pro-
ceedings for the probate of the will.

*Louis Marshall* and *George M. Osgood* for appellant. A
woman obtaining a divorce from her husband on account of his
adultery, upon his death becomes his widow, notwithstanding
such divorce, and as such is entitled to a distributive share of
his personalty in case of his intestacy, and is a necessary party

to all proceedings for the probate of any alleged will made by him, or the granting of letters of administration upon his estate. (Laws of 1837, chap. 460, §§ 5, 7 ; 2 R. S. 61, § 29 ; 2 R. S. 96, § 75; State Const., art. 1, § 6 ; *Booth* v. *Kitchen,* 7 Hun, 265; *Burtis* v. *Burtis,* 1 Hopk. 557; *Griffin* v. *Griffin,* 47 N. Y. 138; *Erkenbrach* v. *Erkenbrach,* 96 id. 456; Laws of 1813, chap. 102; 1 Blackst. Com. 440; *Wait* v. *Wait,* 4 Comst. 100 ; 2 Scribner on Dower [2d ed.], 543 ; *Fitzgerald* v. *Chapman,* L. R., 1 Ch. Div. 567; 2 R. S. 146, § 46; *Renwick* v. *Renwick,* 10 Paige, 421; *Burr* v. *Burr,* id. 20, 25 ; *People* v. *Hovey,* 5 Barb. 117; *Forrest* v. *Forrest,* 6 Duer, 102; *Rade* v. *Lauber,* 16 Abb. Pr. [N. S.] 288; *People* v. *Taber,* 92 N. Y. 146; *Moore* v. *Mayor, etc.,* 8 id. 110.) The claim that the interest which the divorced wife has in her husband's property has been liquidated by the alimony awarded and paid to her during her husband's life is unfounded. (*Forrest* v. *Forrest,* 6 Duer, 153.) The will of Elisha W. Ensign having been made December 1, 1866, and he having thereafter and on May 24, 1867, married, there being issue of the marriage November 10, 1869 (the child surviving about twenty-two hours), and the wife of the testator having survived him, and no provision having been made in the will, or otherwise, for such issue in anticipation thereof, and no mention having been made in such will of anticipated issue, the will must be deemed revoked. (*Lugg* v. *Lugg,* 1 Raym. 441; *Christopher* v. *Christopher,* Dickens, 445; *Spraage* v. *Stone,* Amb. 721; 1 Jarm. on Wills [5th ed.], 126 ; *Emerson* v. *Boville,* 1 Phill. 342; *Sullivan* v. *Sullivan,* id. 343; *Ash* v. *Ash,* 9 Ohio St. 383 ; *Adams* v. *Winne,* 7 Paige's Ch. 99 ; *Sherry* v. *Lozier,* 1 Bradf. 437; *Bloomer* v. *Bloomer,* 2 id. 339; *Loomis* v. *Loomis,* 51 Barb. 557; *Brown* v. *Clark,* 16 Hun, 559 ; affirmed, 77 N. Y. 369.)

*Sherman S. Rogers* for respondent. The divorce dissolved the relation of husband and wife, and the latter was not entitled to any share in her husband's personalty upon his death even had he died intestate. (2 R. S. 144, § 38 ; 2 Bish. on Mar. and Div., §§ 697, 705 ; Schouler on Husb. and Wife,

§§ 558, 559 ; *Wilkinson* v. *Gibson*, L. R., 4 Eq. 162 ; *Fussell* v. *Dowding*, L. R., 14 Eq. 421 ; *Swift* v. *Wenman*, L. R, 10 Eq. 15 ; *Prole* v. *Soady*, L. R., 3 Ch. 220 ; *Legg* v. *Legg*, 8 Mass. 99 ; *Fink* v. *Hake*, 6 Watts, 131 ; *Wintercast* v. *Smith*, 4 Rawle, 177 ; *Porter* v. *Porter*, 27 Gratt. 599 ; *Starr* v. *Pease*, 8 Conn. 541 ; *Van Voorhis* v. *Brintnall*, 86 N. Y. 28 ; *Thorp* v. *Thorp*, 90 id. 602 ; *Moore* v. *Hegeman*, 92 id. 521 ; *Simar* v. *Canaday*, 53 id. 304 ; *Frampton* v. *Stevens*, L. R., 21 Ch. Div. 164 ; *In re Webb*, 1 Tuck. 372 ; *Chenowith* v. *Chenowith*, 14 Ind. 2 ; *Mills* v. *Van Voorhis*, 20 N. Y. 412.)

FINCH, J.   A statutory construction, unchallenged for more than half a century, is assailed on this appeal.

That a divorced wife, however innocent, has no right to a distributive share in the personal estate of her divorced husband, upon his death intestate, has been conceded until a very recent period, but is now asserted to have been all the time a mistake, which should be at last corrected.

A single provision of the statute relating to divorce gives color to the construction sought. Where the decree is founded upon the misconduct of the wife it is expressly provided that "she shall not be entitled to dower in her husband's real estate or any part thereof, nor to any distributive share in his personal estate." (2 R. S. 146, § 48.) On the theory that this was a needed provision to bar the guilty wife of dower, it is argued that it was thought also a needed provision to bar distribution, and the inference is drawn that without such prohibition, or where by reason of the divorced wife's innocence it could not apply, the legislature supposed she would be so entitled, and intended to leave her, when free from fault, in the possession of both rights to their full extent.   But it is quite evident that we have here an unnecessary and superfluous provision as it respects dower. In a previous part of the Revised Statutes (1 R. S. 740, § 8), under the title relating to estates in dower it had already been declared that in case of a divorce dissolving the marriage contract for the misconduct of the wife she shall not be endowed. This provision was needed to cut off

the inchoate dower of the wife in property of the husband ac-
quired prior to the decree, and was useless beyond that, and so
operative for that purpose only. The added provision of section
48 was, therefore, needless. It is conceded to have been a mere
"repetition" having no excuse except that over-caution which
is sometimes as dangerous as neglect. In the same statute
there is a second instance of like superfluous legislation.
It is provided that the dissolution of the marriage contract
shall not affect the legitimacy of the children. (2 R. S.
145, § 43.) In *Wait* v. *Wait* (4 Comst. 95) it was said of
this provision: "No one, however, will pretend that such a
provision, though for greater caution it may have been wise to
adopt it, was in fact necessary." And the court admitted that
this needless care bore "to some extent" upon the prohibition
of dower in section 48. There were thus, concededly, two
instances of needless caution in the statutes under consideration,
and others ought not to surprise us. Ascertaining that the
clause relating to dower was useless, we may expect to find
that equally true of the following one relating to distribution.
The revisers omitted it in their draft, but the legislature added
it. At that time no right to distribution had ever been con-
ceded to the divorced wife, but the law had been administered
to the contrary; and with the full knowledge of that fact in
the mind of the legislature, it is difficult to conceive an intent
to change the rule in so important a matter left to be evidenced
merely by an indirect inference and not affirmatively and
expressly declared.

The rule as it then stood rested upon very clear and definite
grounds. The statute of divorce began with a provision per-
mitting a marriage to be annulled for specific reasons. In such
case no marital rights could exist on either side since the de-
cree adjudged that a lawful marriage had never existed. But
then came provisions for a dissolution of the marriage contract.
In such case the contract is ended and terminated by the decree
of the court. The relation of husband and wife, both actual
and legal, is utterly destroyed, and no future rights can there-
after spring out of or arise from it. Existing rights already

vested are not thereby forfeited, and are taken away only by special enactment as a punishment for wrong. But future rights dependent upon the marital relation and born of it there can be none. Thus, the wife's dower at the date of the decree is vested as an inchoate right, at least as against the husband, whether she be innocent or guilty, by the concurrence of marriage and seizin. It has fastened upon the land and follows it as an incumbrance and would become consummate upon the death of the husband in either event, but for the express mandate of the statute which forfeits it where the wife is the guilty party. But the wife, although blameless, acquires no dower right in lands conveyed to the husband after the divorce because he was not seized during the coverture. (*Kade* v. *Lauber*, 16 Abb. Pr. [N. S.] 288.) The coverture is ended and cannot serve to found a new right after its destruction. The existing inchoate right remains, because it has already accrued, has not been forfeited by guilt, and does not depend upon the continuance of the marriage relation, but independent of that continuance becomes consummate by the death of him who was the husband when it sprang into being. For the same reason that future rights, dependent for their origin upon the marriage relation, cannot arise after its dissolution, and which prevents the innocent wife from having dower in her husband's after-acquired lands, it follows that she can have no distributive share in his personalty. At the date of the decree she has no existing right in his personal estate. That is his. No fraction of it and no lien upon it are hers. He may sell it without her consent, give it away if he pleases, and bequeath it at his own free choice. If it remains his at his death then the wife, if the marriage relation exists, and has not been sundered, becomes "the widow" named in the statute of distribution, and at that moment, for the first time, arises her right in the personal estate dependent upon the existence of the marriage at the husband's death. Administration is given, first, "to the widow." The law contemplates the possible existence of but one, and makes no provision for a struggle of priority between two or more. To "the widow" is given one-third of

the personal estate and all the other provisions allowing her occupation of her husband's house, and setting apart for her specific articles of household use, indicate the understanding of the legislature that she only was "the widow" who held to the deceased, at the date of his decease, the relation of a wife. Otherwise the statutes, meant to be both just and generous, become fomentors of discord, and plan for bitterness and war. The divorced wife is not "the widow." She may be the lawful wife of another man, and the deceased may have lawfully remarried in another State, or by permission of the court in this, and it would follow, if the appellant is right, that a woman may be a widow although her lawful husband is living, and that an intestate may leave two widows with equal rights to administration and distribution. Suppose that, with unusual activity, he should leave four, how would each get one-third of the personalty? And were the children of any account in the scheme of distribution? In one event "the widow" is entitled to the whole surplus. The appellant's counsel solves the struggle for priority by applying to the later wives, with a sort of grim humor, the maxim *caveat emptor*, but the suggestion is not quite adequate to unsettle the law and unite at desired points a severed bond. When the court dissolves the marriage contract at the suit of the innocent wife, it is authorized to decree the payment to her of a suitable allowance. And why is that? If any marital right continues after the divorce, the wife remains entitled to her support and may enforce it in the ordinary way. On the contrary the statute recognizes that when the marriage tie is broken, and the relation ended, no future rights will remain to the wife, and no future obligations bind the husband which have their root in the marriage relation. The court is authorized to give by its decree, in the form of an allowance, a just and adequate substitute for the right of the innocent wife which the divorce cuts off and forbids in the future. The tribunal granting the decree investigates the husband's financial condition, takes proof of the value of his property, and then makes a suitable allowance for her life, and so puts the decree and its power in the place and room of what is lost in the future.

If because the wife is innocent the marriage relation in any degree subsists as against the husband, we must confront the anomaly of a contract adjudged to have been dissolved, and yet remaining not dissolved as to one of the parties, and read in the decree that both sides are freed from the obligations of the marriage contract, when the court pronouncing it knows it to be false, since some obligations of the husband will remain. The distinction drawn on behalf of the appellant between rights and obligations does not relieve the difficulty, for it is impossible to conceive of a right of the wife which does not impose upon the husband a corresponding obligation. The true theory of the statute is, that from the date of the decree no existing and vested rights are forfeited except by the express mandate of the statute, but since the marriage contract ends and the relation terminates, no future marital right or obligation can arise for or against either. In place of them stands the decree of the court, looking beyond the bond it is about to sever, recognizing the inevitable consequences to follow the uplifted arm, and providing for the innocent wife or husband by its own mandate that reparation, which, after the decree, is possible from no other source.

Nothing decided in *Wait* v. *Wait* (*supra*), upon which the appellant so much relies, is at all to the contrary. The question there was over the right of the innocent wife to dower in the lands of which the husband was seized before the divorce, and, therefore, during coverture. The argument against that right assumed as not open to contradiction that the divorce ended the marriage so that none of its future rights or obligations could survive, and then sought to show that the wife's inchoate dower was a mere possibility or expectation, having no tangible existence until in the future following the decree. This court met the argument exactly at that point and asserted as the sufficient answer, what we have already pointed out, that the wife's dower, by the concurrence of marriage and seizin, attached to the land as a fixed and vested right, not to be shaken off unless by her consent or some declared forfeiture or decree of the sovereign power, and then argued that the disso-

lution of the marriage operated prospectively only, and so had no retroactive effect upon a right already vested. Observe that the ground taken was not that the marriage relation in any respect survived the divorce. If it had been, the argument founded on the character of the inchoate dower as a vested right would have been pointless and unmeaning. And while there are in the opinion expressions indicating a belief in some sort of continuance of the marriage relation after the decree, they were unessential to the decision and were not the ground upon which it stood.

The further argument of the appellant rests upon the statute against bigamy and our construction of it in *People* v. *Faber* (92 N. Y. 146). The statute relating to divorce prohibits the guilty defendant from marrying again, and a clause to that effect is usually inserted in the decree. This was needless and another instance of superfluous care, if the marriage relation survived the divorce, as against the guilty party, and the express prohibition is here an argument against that theory of equal character and force with that derived by the appellant from section 48. But in spite of the prohibition and because the divorced husband no longer had a wife living, it was held in *People* v. *Hovey* (5 Barb. 117), that his after-marriage, although punishable as a contempt, did not constitute the crime of bigamy. We overruled that decision, but not at all upon the ground that the divorced wife remained the culprit's wife in any sense or respect, but for the reason that the statute by its express words disclosed an intention to make the crime of bigamy consist not only in marrying a second time while the first wife was living, but in so marrying while under the prohibition of the law, and during the life of the woman who had been the wife before the decree of divorce. We construed these specific words as intended to force such a case into the meaning of the statute which without them would not at all have embraced it, and without them would have led us to affirm *People* v. *Hovey*. Surely nothing was further from our thought and from the careful reasoning of the opinion than an idea that the divorced wife remained a wife as to the defend-

ant, and that he was a bigamist for that reason.  We held him to be such because the statute put him "in the situation" of one having a wife living, "for the purpose" of enforcing the statutory provision.

The recent legislation which permits a divorced husband, prohibited from re-marrying, to do so after five years and with the consent of the court, and the class of cases which affirm the validity of such second marriage in another State over whose boundaries our own prohibition does not extend are alike inconsistent with any doctrine which makes the marriage relation as to either of the parties remain in existence after the dissolution of the contract and the severance of the bond.  With the exception of a single case in the Supreme Court, itself overruled, the statutes and decisions are in entire harmony with the practice and the rule which has so long prevailed.  We are of opinion that it should not be changed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.