(May 12, 1925.)

ANNA STACIA SIMONTON, Appellant, also Plaintiff and
Respondent, v. SARAH E. SIMONTON, Administra-
trix of the Estate of ROLVIN D. SIMONTON, de-
ceased, Respondent, also Defendant and Appellant.

[236 Pac. 863.]

JUDGMENTS—COLLATERAL ATTACK—SUFFICIENCY OF AFFIDAVIT—SERVICE
BY PUBLICATION—DIVORCE—SUPPORT OF CHILDREN—SEPARATE MAIN-
TENANCE — TERMINATION OF LIABILITY — NECESSITY FOR MODIFICA-
TION OF DECREE.

1. The attack upon a judgment is collateral if the action or
proceeding has an independent purpose and contemplates some
other relief or result than the mere setting aside of the judgment,
although the setting aside of the judgment may be necessary to
secure such independent purpose.

2. Affidavit of summons and complaint examined and *held* to
be sufficient under the Washington statute.

3. A showing that defendant did not receive a copy of the
summons was not a showing that summons was not published or
mailed, hence not a sufficient showing that summons was not pub-
lished or mailed, hence not a sufficient showing to establish want
of jurisdiction for want of legal service.

4. A subsequent decree of divorce on constructive service does
not end the husband's obligation under, or the enforceability of,
a prior decree for separate maintenance of wife and minor chil-
dren, where the separate maintenance decree was not modified by
court action and such obligation may be enforced against the
husband's estate after his death for instalments due up to the
time of his death.

5. A valid judgment for the support of wife and minor chil-
dren until modified by court action is enforceable according to
its terms.

6. Where a wife secured a decree for separate maintenance
upon personal service and the husband later in another jurisdic-
tion, without bringing the former decree to the attention of the
latter court, on substituted service, secured a divorce, and never

Publisher's Note.

1. Direct as distinguished from collateral attack on judgment, see
note in Ann. Cas. 1914B, 82.

paid the maintenance decree or any portion thereof, the decree for separate maintenance will continue in full force and effect until directly modified, and where the former husband dies before such modification, the past due and unpaid instalments of separate maintenance falling due within the period of the statute of limitations and up to the time of his death may be enforced by the former wife against the deceased husband's estate.

APPEAL from the District Court of the Tenth Judicial District, for Nez Perce County. Hon. Wallace N. Scales, Judge.

Action for money judgment. Judgment for plaintiff. *Affirmed in part and modified in part.*

Benjamin F. Tweedy, for Appellant.

Where the record shows a noncompliance with the statutes as to proof and the things to be done to authorize publication of a summons, the judgment upon collateral attack will be held to be absolutely void. (*People v. Greene,* 74 Cal. 400, 5 Am. St. 448, 16 Pac. 197; *Harris v. Sargeant,* 37 Or. 41, 60 Pac. 608; *Campbell Printing Press etc. Co. v. Marder Luse & Co.,* 50 Neb. 283, 61 Am. St. 573, 69 N. W. 774.)

"But where the attempted service does not reach the defendant at all, there is no service, and the proceedings are void." (*Campbell Printing Press etc. Co. v. Marder Luse & Co., supra.*)

Where there has been a flagrant, wilful and intentional concealment of the facts from the court and denial of opportunity to defend, there is such a fraud practiced to obtain a judgment that courts, upon collateral attack, will vacate the judgment as being absolutely void and fraudulent. (*Ward v. Town of Southfield,* 102 N. Y. 287, 6 N. E. 660; *Glover v. Brown,* 32 Ida. 426, 184 Pac. 649; *Nicholson v. Leatham,* 28 Cal. App. 597, 153 Pac. 965, 155 Pac. 98; *Brown v. Trent,* 35 Okl. 164, 128 Pac. 895; *Liebhart v. Lawrence,* 40 Utah, 243, 120 Pac. 215; *Wagner v. Beadle,* 82 Kan. 468, 108 Pac. 859; *Campbell-Kawannanahoa v. Campbell,* 152 Cal. 201, 92 Pac. 184; *Venner v. Denver etc. Co.,* 40 Colo. 212, 122 Am. St. 1036, 90 Pac. 623; *Donovan v. Miller,* 12 Ida. 600, 88

Pac. 82, 9 L. R. A., N. S., 524; *Parsons v. Weis,* 144 Cal.
410, 10 Ann. Cas. 444, 77 Pac. 1007.)

Where the action is to recover money, the statute, as of
course, awards costs to the plaintiff, recovering the money
judgment, and denies all costs to the judgment debtor.    (C. S.,
sec. 7207; 11 Cyc. 28; *Printz v. Brown,* 31 Ida. 443, 174
Pac. 1012; *Rhodenbaugh v. Stingel,* 31 Ida. 594, 174 Pac.
604; *McArthur v. John McArthur Co.,* 39 Cal. App. 704, 179
Pac. 700; *Nowogroski v. Southworth,* 100 Wash. 336, 170
Pac. 1011; *Northern California Power Co. v. Waller,* 174 ·
Cal. 377, 163 Pac. 214; *Stimson etc. Co. v. Lemoore etc. Co.,*
31 Cal. App. 396, 160 Pac. 845; *Empire State Surety Co. v.
Moran Bros. Co.,* 71 Wash. 171, 127 Pac. 1104; *Nation v.
Littler,* 59 Kan. 773, 52 Pac. 96; *Havens v. Dale,* 30 Cal.
547; *Rand v. Wiley,* 70 Iowa, 110, 29 N. W. 814; *Meskimen
v. Day,* 35 Kan. 46, 10 Pac. 14; *Phipps v. Taylor,* 15 Or.
484, 16 Pac. 171.)

James E. Babb, for Respondent.

Where a formal marriage is proven, as here, between de-
ceased and defendant "the presumption . . . . in favor of
the validity of the marriage includes a presumption equally
strong, that whatever impediments may have existed . . . .
had been removed" and "casts the burden" upon plaintiff
"to show by clear, cogent and satisfactory evidence . . . .
that he had obtained no divorce from his former spouse."
(*Smith v. Smith,* 32 Ida. 478, 185 Pac. 67.)

It is not necessary that there be any findings of service on
defendant as a basis of conclusive presumption on collateral
attack.    (23 Cyc. 1085, and cases cited.)

But here the court expressly found in its findings "That
said defendant has made default in said action," and both
recites and adjudges the default in the decree, and a finding
of a default is a finding of service.    (*Sacramento Bank v.
Montgomery,* 146 Cal. 745, 81 Pac. 138; *Harpold v. Doyle,*
16 Ida. 694, 102 Pac. 165.)

And the presumptions are the same where service is by
publication as where it is personal.    (*Harpold v. Doyle,*

40 Idaho—48

*supra; McHatton v. Rhodes,* 143 Cal. 275, 101 Am. St. 125, 76 Pac. 1036.)

"In a collateral attack on the judgment, the want of jurisdiction to render the judgment must appear upon the face of the judgment-roll, otherwise the presumption is in favor of the validity of the judgment." (*O'Neill v. Potvin,* 13 Ida. 721, 93 Pac. 20, 257.)

"Where complainant in a suit to secure separate maintenance or an interest in defendant's property seeks to have a decree for a divorce previously rendered declared of no effect, the attack on such decree is collateral, and she cannot maintain the suit on the ground of fraud of defendant in obtaining the decree, since fraud in procuring a judgment cannot be shown by the parties thereto in a collateral proceeding." (*Peyton v. Peyton,* 28 Wash. 278, 68 Pac. 757; *Donovan v. Miller,* 12 Ida. 600, 10 Ann. Cas. 444, 88 Pac. 82, 9 L. R. A., N. S., 524.)

The Washington statute does not require that place of residence be stated (sec. 4877, 2 Ballinger's Ann. Codes), and only requires mailing of summons, etc., "to defendant's place of residence," and the affidavit in the Pasco record states it was so mailed. (*Dorian v. Dorian* (Okl.), 222 Pac. 676.)

Deceased's deed to defendant of the Clarkston property converted it into separate property of deceased according to law of all community states. (21 Cyc. 1665, and cases cited.)

When the minor children came of age, for whose support with the mother the order sued upon was made, the order ceased to be operative, and the judgment below for instalments thereafter should be reversed. (*Evans v. Evans,* 116 Wash. 460, 199 Pac. 764; *Boehler v. Boehler,* 125 Wis. 627, 104 N. W. 840.)

"The liability under the decree is terminated by the child's attaining majority." (19 C. J. 360; *Tremper v. Tremper,* 39 Cal. App. 62, 177 Pac. 868; *Young v. Young,* 179 Iowa, 1259, 162 N. W. 617; *Snover v. Snover,* 13 N. J. Eq. 261; *Kuether v. Kuether,* 174 Wis. 538, 183 N. W. 695.)

The order for separate maintenance is based upon the status growing out of the relationship between husband and wife living separate and apart, so that death of either or re-marriage or dissolution of the relation by divorce decree of necessity terminates the payments under such an order. (*McCullough v. McCullough,* 203 Mich. 288, 168 N. W. 929; *Bushnell v. Cooper,* 289 Ill. 260, 124 N. E. 521, 6 A. L. R. 1517; *Zanone v. Sprague,* 16 Cal. App. 333, 116 Pac. 989; *Spradling v. Spradling,* 74 Okl. 276, 181 Pac. 148; *McKannay v. McKannay* (Cal. App.), 230 Pac. 214.)

GIVENS, J.—Anna Stacia Simonton, appellant in one appeal and respondent in another, both appeals being considered here together, and Rolvin D. Simonton, deceased, were married in Michigan, February 9, 1869. In November, 1893, in Kootenai county, Idaho, Rolvin D. Simonton brought suit for divorce, which was denied, and on Anna Stacia Simonton's cross-action she was awarded $15 per month for the support of herself and two minor children. In October, 1898, in Franklin county, Washington, on service by publication, Rolvin D. Simonton secured a default divorce, and in December, 1901, at Moscow, Idaho, married Sarah E. Simonton, with whom he thereafter lived until his death, December 8, 1915.

On January 11, 1917, Anna Stacia Simonton commenced the present action, now against Sarah E. Simonton, administratrix of the estate of Rolvin D. Simonton, deceased, for the delinquent maintenance money, to establish her rights as the surviving widow of Rolvin D. Simonton, to discover assets alleged to belong to the estate of Rolvin D. Simonton, and especially to recover $1,500 received by Sarah E. Simonton, August 3, 1916, from Thomas J. Travis, the purchaser of a certain lot, claimed to have been the separate property of Rolvin D. Simonton.

Sarah E. Simonton pleaded the statute of limitations in opposition to the collection of support money; that Rolvin D. Simonton's liability therefor ceased when he procured his divorce and the two minor children became of age; that

the $1,500 was her sole and separate property, and that she is the surviving widow of Rolvin D. Simonton.

Judgment was entered in favor of Anna Stacia Simonton for $1,080 maintenance arrears and interest on each monthly instalment at $15 from January 1, 1909, on; the lower court denied her the $1,500, found that Sarah E. Simonton was the surviving widow, and awarded a portion of the costs against Anna Stacia Simonton on the theory that she did not prevail as to all relief asked by her.

Anna Stacia Simonton appealed on the grounds that she is entitled to all delinquent instalments of the support money and the $1,500 and that no costs should have been awarded against her.

Sarah E. Simonton resists, on her cross-appeal, the judgment for the support money and the awarding of any costs against her.

Anna Stacia Simonton attacks the Washington divorce decree on the ground of fraud, because the affidavit for publication of summons did not specify the exact ground upon which the divorce was sought nor state defendant's residence, and because the complaint did not state a cause of action.

Sarah E. Simonton claims the affidavit was sufficient, and if not, the presumption in favor of the regularity of a judicial proceeding presupposes another and sufficient affidavit, and furthermore that as Rolvin D. Simonton and Sarah E. Simonton cohabited as man and wife for a number of years the burden of proof was upon Anna Stacia Simonton to disprove a lawful marriage. (*Smith v. Smith*, 32 Ida, 478, 185 Pac. 67.)

"The attack upon a judgment is collateral if the action or proceeding has an independent purpose and contemplates some other relief or result than the mere setting aside of the judgment, although the setting aside of the judgment may be necessary to secure such independent purpose." (*O'Neill v. Potvin*, 13 Ida. 721, 93 Pac. 20, 257.)

The Kootenai county divorce was sought on the ground of desertion while the Washington divorce was sought and obtained on the ground of cruelty. No proof of fraud in the

procurement of the Washington divorce was shown or al-. leged except that the plaintiff knew he had been denied the divorce in Idaho and that the record does not disclose that he brought that to the attention of the Washington court. This was not necessarily such fraud as would vitiate the judgment nor would the Kootenai county decree, denying the divorce, have been, if it had been or could have been set up, *res adjudicata* as a defense in the Washington divorce action. (*Marshall v. Underwood,* 38 Ida. 464, 221 Pac. 1105.)

The judgment-roll in the Washington case contains the decree of the court, reciting, among other things, that the default of defendant had theretofore been entered.

"To avoid a judgment, the burden is on the judgment debtor attacking it in a collateral proceeding to show that no valid service was had upon him." (*McHugh v. Conner,* 68 Wash. 229, 122 Pac. 1018; *Merz v. Mehner,* 57 Wash. 324, 106 Pac. 1118.)

The Washington law authorized service by publication and mailing and the showing by Anna Stacia Simonton that she did not receive a copy of the summons was not a showing that summons was not published or mailed, hence not a sufficient showing to overthrow the judgment. (*Merz v. Mehner, supra.*) The affidavit is substantially in the language of the statute, secs. 4869–4897 and secs. 5716–5720, Ballinger's Ann. Codes and Statutes of Washington, vol. 2, which has evidently been held sufficient by the Washington supreme court.

"Under the statute of Washington, *supra,* no such order (of the court) is required. The summons is not even issued by the clerk, and no judicial determination is required before publication. When the ultimate fact is stated substantially in the language of the statute, publication may be made. This court held in *De Covert v. Dolan,* 7 Wash. 365, 35 Pac. 72, 1072, at page 367, 7 Wash., and at page 73, 35 Pac., as follows: 'But the statement that the defendants reside out of the territory is the statement of a fact, and is all that need be said upon the subject. The statute does not

make it necessary to show where the defendants resided. This is immaterial, so that they are nonresidents. . . . . The statute clearly makes the fact that the defendant resides out of the territory ground for obtaining service by publication, and upon an affidavit made to that effect the summons issued by the clerk as a matter of course; it not being necessary to obtain any order from the court or judge for that purpose, as is the case in most of the states before service by publication is authorized.' " (*Goore v. Goore,* 24 Wash. 139, 143, 63 Pac. 1092, at 1094; *Dorian v. Dorian,* 101 Okl. 9, 222 Pac. 676.)

Sec. 5716, Ballinger's Codes and Statutes of Washington, subdivisions 5 and 7, second paragraph, provides a divorce may be granted for:

"5. Cruel treatment of either party by the other, or personal indignities rendering life burdensome; . . . .

"7. . . . . And a divorce may be granted upon application of either party for any other cause deemed by the court sufficient, and the court shall be satisfied that the parties can no longer live together; . . . . "

The complaint further alleges:

"The plaintiff further alleges that he has not lived with defendant since July, 1885, that for several years previous to this time, this plaintiff was almost constantly subjected to cruel treatment, and personal indignities were inflicted upon him almost daily by the defendant rendering his life so burdensome that he was compelled to leave; but before so doing turned all his property, some $3,000, over to the defendant.

"The plaintiff further avers that he and the defendant can never live together as husband and wife."

These allegations were sufficient. (*Colvin v. Colvin,* 15 Wash. 490, 46 Pac. 1029.)

It is contended by Sarah E. Simonton that the instalments of separate maintenance, awarded by the Idaho court, falling due after the date of the divorce decree rendered by the Washington court cannot be recovered, because the marital status as the basis of the order for separate maintenance

was terminated by the divorce decree. The order for separate maintenance of the first wife and children was an obligation arising out of the relation of marriage between the parties, dependent upon the continuance of the marital relation only as to the maintenance of the wife.

Alimony is dependent either upon the pendency of a divorce action or the severance of the marriage relation. Separate maintenance depends upon the continuation of the marriage relation and is for the support of the wife while the marriage relation continues and the spouses live separate and apart. The purpose of both allowances is the same, namely, the support of the wife; if the marriage continues, it is an enforcement of the husband's obligation to care for his wife; if a divorce has been granted the continuation of the obligation is in the nature of a penalty because of the husband's violation of the marital vows, and as to the wife, prior to her remarriage if divorced, no legal difference distinguishes the necessity for such allowance.

The cases, therefore, which pass upon the awarding and enforcement of alimony in an action subsequent to that in which a divorce had been previously granted, such as *Spradling v. Spradling,* 74 Okl. 276, 181 Pac. 148, *Adams v. Abbott,* 21 Wash. 29, 56 Pac. 931, *Cook v. Cook,* 56 Wis. 195, 14 N. W. 33, *Thurston v. Thurston,* 58 Minn. 279, 59 N. W. 1017, and *Toncray v. Toncray,* 123 Tenn. 476, Ann. Cas. 1912C, 284, 131 S. W. 977, 34 L. R. A., N. S., 1106, are not in point.

When this case was previously before the court (*Simonton v. Simonton,* 33 Ida. 255, 193 Pac. 386) the court held that where a decree for separate maintenance, which might have been modified, was not modified prior to the husband's death, it may be enforced against his estate as to the instalments which fell due prior to his death, expressly providing that such decree, when so sued on, would be subject to any defense which might be available and properly set up in the answer. From the transcript in that appeal it appears that the only question involved was the sufficiency of the complaint on demurrer.

*Evans v. Evans,* 116 Wash. 460, 199 Pac. 764, cites 19 C. J. 360, to the proposition that after children come of age their allowance under a divorce decree for the joint maintenance of children and mother ceased as to the children. Of the cases cited in the text, *Snover v. Snover,* 13 N. J. Eq. 261, and *Young v. Young,* 179 Iowa, 1259, 162 N. W. 617, hold that the liability for support of the children by the father ceases when they reach majority. *Boehler v. Boehler,* 125 Wis. 627, 104 N. W. 840, holds that the court could not enter a decree for support of the children after their majority.

In the Evans case the court states that before the wife could enforce such joint decree providing support for her, after the children became of age, she must prove the sum that was intended for her separate maintenance and support, and unless she had the decree so modified, she would be entitled to nothing. The cases cited in the text, as relied upon, do not, however, directly support such proposition.

The court in the Evans case has to our minds confused the duty of having the decree modified and its actual modification. Not having been modified it was a valid decree, and until so modified it is binding according to its terms, to wit, to pay the wife $15 a month. To say that because it could have been modified and therefore it will not be enforced does more violence than to say that being otherwise valid it will be enforced until modified.

The precise question involved herein is as follows: Where a wife has secured, on personal service, a judgment for separate maintenance in the courts of one state and later the husband goes into a different state and on substituted service secures a divorce and later the husband dies and the wife sues his estate for the unpaid delinquent instalments provided for in the separate maintenance decree, where no modification was had by the husband during his lifetime of the separate maintenance decree, and the divorce action made no provision for the support of the wife, is the divorce decree an absolute bar to the enforcement of the separate maintenance instalments against the deceased husband's es-

tate, on the ground that the dissolution of the marital rela-
tion, as the necessary basis and support of separate main-
tenance, having been effected by the divorce, without court
modification, *ipso facto* ended or rendered unenforceable the
separate maintenance decree?

*Harrison v. Harrison,* 20 Ala. 629, 56 Am. Dec. 227, under
a similar state of facts with reference to the operation and
effect of a subsequent divorce decree in one state upon a
prior separate maintenance decree in another state, held
that the payment of the instalments of separate maintenance
could be enforced up to the date of the divorce decree, but
inferentially held that instalments falling due after that
date could not be enforced, saying:

"We are of the opinion that both decrees may stand, so far
as in their results they are not incompatible with each other.
The subject matter and object of each are wholly different.
The first seeks to enforce the obligations and duties spring-
ing out of the relation of marriage; the second, entirely
to annul that relation, and having effected the contemplated
object puts a period to the operation of the first, which is
necessarily dependent upon that relation."

Stating further that the divorce decree as effectually put
an end to the relation of marriage as the death of either of
the parties, concluding as a consequence that all duties and
obligations necessarily depending upon the continuation of
that relation immediately ceased. This case has been fol-
lowed in *McCullough v. McCullough,* 203 Mich. 288, 168
N. W. 929.

In the case of *Gibson v. Gibson,* 81 Misc. Rep. 508, 143
N. Y. Supp. 37, the court had under consideration the fol-
lowing situation: In 1910 the plaintiff wife obtained in New
York state a judgment for separate maintenance and there-
after she recovered in Ohio a decree of absolute divorce
and the defendant failing to pay the separate maintenance
allowance after the Ohio divorce, a motion was made in New
York to punish him for contempt, whereupon the defendant
contended that the granting of the absolute divorce in Ohio
relieved him from paying the separate maintenance and the

court stated that the proper practice required that he move for a modification of the separate maintenance decree before he could be relieved from its enforcement, the court saying:

"The direction for the payment of alimony in an action for a judicial separation proceeds upon a different theory than provisions for alimony in cases of absolute divorce. In the latter class of cases the marriage is dissolved, and the judgment for alimony in such cases is rather in the nature of a penalty imposed upon the guilty party for a violation of his marriage vows and obligations. Alimony in such cases is rather a substitute for the rights of the innocent wife which the divorce cuts off and forbids in the future. This distinction has been pointed out in numerous cases. (*Wilson v. Hinman,* 182 N. Y. 408, 108 Am. St. 820, 75 N. E. 236, 2 L. R. A., N. S., 232; *Estate of Ensign,* 103 N. Y. 284, 57 Am. St. 717, 8 N. E. 544.)

"In cases of divorce, the obligation to pay alimony terminates on the death of the husband. (*Johns v. Johns,* 44 App. Div. 533, 60 N. Y. Supp. 865; *Barnes v. Klug,* 129 App. Div. 192, 113 N. Y. Supp. 325.)

"The plaintiff in this action has seen fit to become a resident of the state of Ohio, and to invoke the jurisdiction of the courts of that state, and obtain an absolute divorce from the defendant. This divorce, we have seen, she is estopped from questioning, and it, in effect, has terminated the marriage relation between herself and the plaintiff, upon which the provision of the decree for the payment of alimony was predicated. In legal contemplation, the Ohio decree was just as effective to terminate the marriage relation as the death of the defendant would have been. Having elected to terminate that relation by proceedings in the Ohio courts, we do not think the plaintiff can insist that she still has the right to enjoy the benefits flowing from that relationship, and it follows that the judgment directing the payment of alimony should therefore be modified as asked.

"In *Burton v. Burton,* 150 App. Div. 790, 135 N. Y. Supp. 248, the defendant had obtained a decree of judicial separation. Subsequently the defendant in that action brought an

action for an absolute divorce against his wife on the ground of adultery, and succeeded in his action. The court held that the court had the right and power by its judgment of divorce to provide that the plaintiff should be relieved from the obligation to pay further alimony by virtue of the decree of separation, upon the ground and for the reason that the marriage relation was terminated, which was the basis of the provision for alimony in the judgment for separation.''

The above case, therefore, is authority merely for ·the proposition that where a subsequent divorce decree has been obtained by the wife, the defendant, upon proper motion, may be relieved from the obligation of a prior separate maintenance decree, but does not pass upon the question, except inferentially, of whether or not the prior separate maintenance decree, if not modified, would have been enforceable after his death.

It may be conceded that after the husband's death no modification of the separate maintenance decree would be necessary, and since in the Gibson case, *supra*, it is stated that the proper practice required him to move for a modification of the separate maintenance decree, the logical conclusion to be drawn therefrom is that without such modification the separate maintenance decree would have remained enforceable even though the marriage relation had been terminated.

*Burton v. Burton,* 150 App. Div. 790, 135 N. Y. Supp. 248, quoted in *Gibson v. Gibson, supra,* would seem to be in conflict with *Harrison v. Harrison, supra,* since in *Burton v. Burton* the court held that a subsequent action for absolute divorce could not indirectly modify an existing judgment for separation, presumably in full force, although under the subsequent decree the husband could apply directly for a modification of the provisions of the prior judgment for separate maintenance, thus implying at least that until such direct modification was secured the prior judgment would remain in full force and effect, and having become, as to each instalment, a final judgment and having been· unmodi-

fied, was enforceable as a debt, though the status upon which the decree rested was changed.

Even though the marital relation had been dissolved because of the granting of the divorce, and the children had come of age, there is no positive assurance thereby that if an action had been brought directly for the modification of the separate maintenance decree relief would have been granted, or if granted, would have been granted without imposing conditions upon the husband. In other words, upon application to a court of equity for a modification of the separate maintenance decree the court would, or at least could, have required that equity be done before equity would have been accorded, by insisting that the husband pay the back instalments as was indicated in *Richards v. Richards,* 87 Misc. Rep. 134, 149 N. Y. Supp. 1028.

In *Barber v. Barber,* 21 How. 582, 16 L. ed. 226, a wife had secured in New York state a decree for maintenance under a divorce *mensa et thoro.* Later the husband went to Wisconsin and there applied for a divorce *a vinculo* and the wife sued in the federal court to enforce the maintenance portion of the New York decree. The main issue before the court apparently was the right of the wife to bring the action, although the court in the course of the opinion stated:

"It [meaning the Wisconsin decree] certainly has no effect to release the defendant there and everywhere else from his liability to the decree made against him in the state of New York."

It is conceded that the Idaho court at the time it gave the decree of separate maintenance had jurisdiction of the parties and the subject matter, consequently the present claim of the administratrix, that the Idaho decree is without force because of the Washington decree, is a collateral attack and subject to the same rule as applied in the instant case to the attack by Anna Stacia Simonton upon the Washington decree of divorce. (*Emery v. Emery,* 104 Kan. 679, 180 Pac. 451.)

In *Gilbert v. Hayward,* 37 R. I. 303, 92 Atl. 625, upon an action for divorce from bed and board the wife was allowed separate maintenance for the support of herself and her then minor daughter until further order of the court, and while the word "alimony" was used in the original decree the opinion shows that in fact it was separate maintenance, granted upon the continuation of the marriage relation, as distinguished from alimony granted upon the severance of the marriage relation. The decree was not modified and no payment made for a long time prior to the death of the husband, after which time the wife sued his estate to collect the arrears, which arrears within the statute of limitations were allowed. In opposition thereto it was urged that after the daughter came of age the judgment ceased to have any force or effect. After reviewing numerous cases the court says:

"The fourth exception alleges a change of circumstances of the parties to the divorce in that the minor child named in the decree, the present appellant, became of age many years ago, and was to some extent supported by her father during her minority; and, second, that Annie F. Hayward was allowed, after the decree of separation, to engage in the business as a trader and take the profits of the business. As to the first point, the ceasing by the mother to provide for the daughter and the latter's becoming of age furnished ground for an application by the husband to modify the decree. It is impossible to know whether or not the decree would have been modified on such an application. The weekly allowance was so moderate it cannot be positively assumed that under the conditions ten years later this sum would be any more than the court would then have allowed the wife for her own support. But the decree was not modified, and no application for modification was ever made. It is needless to say that even a good ground therefor does not, *ipso facto,* effect the modification of a decree. (See *McIlroy v. McIlroy, supra,* 208 Mass. 463, 464, Ann. Cas. 1912A, 934, 94 N. E. 696.) But, furthermore, this is a proceeding at law to enforce a decree. The decree is not the subject of attack collaterally, except on the question of the

jurisdiction of the court making the decree for alimony, which question is not raised here."

The above case, therefore, seems to lay down the rule that in absence of modification, even though good ground for modification may have existed, the judgment will continue in full force and effect. It does not appear that *Gilbert v. Hayward* considered the case of *Harrison v. Harrison, supra,* and they seem in direct conflict with each other.

Since this question is one of first impression in this court and there does not appear to have been a prior complete determination of the particular point involved herein, and in view of the reason for the allowance of separate maintenance or alimony and of the holdings in the above courts, we are justified in laying down the law to be that in this case, where a wife secured a decree for separate maintenance upon personal service and the husband later in another jurisdiction without bringing the former decree to the attention of the latter court, on substituted service secured a divorce, and never paid the maintenance decree or any portion thereof, the decree for separate maintenance will continue in full force and effect until directly modified, and where the former husband dies before such modification, the past due and unpaid instalments of separate maintenance falling due within the period of the statute of limitations and up to the time of his death may be enforced by the former wife against the former husband's estate.

The amount in the Idaho decree being in a lump sum, even though the wife was divorced, did not, prior to its modification, deprive such decree of its enforceability as a whole.

To hold otherwise would in effect be allowing Rolvin D. Simonton to have indirectly, through the Washington decree, had the Idaho decree modified in a manner and under service which would not have been sufficient to enable him to have directly had the Idaho decree modified. The Idaho decree did not affect the status of the parties and the Washington decree in no way affected the *res* of the property nor did it affect the status or *res* of the obligation resting on

Rolvin D. Simonton to continue, under the Idaho decree, the support of his then minor children.

Rolvin D. Simonton's divorce being valid, the marriage of Rolvin D. Simonton and Sarah E. Simonton is valid and Anna Stacia Simonton is not the surviving widow of Rolvin D. Simonton. The evidence is amply sufficient to sustain the court's finding that the $1,500 in question was the sole and separate property of Sarah E. Simonton and that Rolvin D. Simonton never had any interest therein, and that Anna Stacia Simonton is therefore not entitled to any portion of it.

Anna Stacia Simonton recovered a money judgment in the lower court for more than $100 and therefore was entitled to her costs. (C. S., sec. 7207.)

The judgment of the trial court is therefore sustained except as to the awarding of costs in the lower court, and it is reversed as to that portion of the decree, and since it appears that all the questions raised by Sarah E. Simonton, administratrix, could have been presented on the appeal taken by Anna Stacia Simonton, each party will pay their costs in this court, and it is so ordered.

Wm. E. Lee and Budge, JJ., concur.


TAYLOR, J., Dissenting.—I dissent from the portion of the majority opinion which sustains that part of the judgment awarding Anna Stacia Simonton $1,080 on the decree for separate maintenance of the wife and for support of the minor children. As to the balance of the opinion, I concur. I shall refer to Anna Stacia Simonton as plaintiff, because there are two appeals here and two Mesdames Simonton.

My reasons are: The decree of the Kootenai county court was rendered in November, 1893. The deceased, Rolvin D. Simonton, and the plaintiff were divorced by a valid decree of the Washington court in October, 1898. The son Rolla

attained majority December 31, 1899, and the son Pearl, August 24, 1901.

The opinion concedes that ''Separate maintenance depends upon the continuation of the marriage relation and is for the support of the wife while the marriage relation continues and the spouses live separate and apart.''

The Kootenai county court had no jurisdiction or authority to decree separate maintenance to the wife except during the continuance of, and dependent upon, the marital relation, or support of the children beyond their minority. The law, in effect, wrote into that decree this language:

''Separate maintenance to the wife so long as she remains the wife, and support of the children so long as they remain minors.''

''Words to that effect are a part of the statute by necessary implication.'' (*Boehler v. Boehler,* 125 Wis. 627, 104 N. W. 840.)

See, also, in addition to the cases cited in the opinion: *Tremper v. Tremper,* 39 Cal. App. 62, 177 Pac. 868; *Piatt v. Piatt,* 32 Ida. 407, 184 Pac. 470; *Dewees v. Dewees,* 55 Miss. 315; *Flower v. Flower* (N. J.), 44 Atl. 951.

This is not a case for consideration of the effect upon, or right of modification of, a decree upon the happening of some event which might entitle the defendant therein to move for modification or vacation of a portion thereof, where there still remain portions of the decree unaffected by such event, or where the decree is still supported by facts justifying some portion of its provisions for maintenance or support, and no such motion is made.

While the court says this is a case of first impression in this court, and it might be justified in inclining to the view that a decree which could be modified, for instance, upon the divorce, and was not so modified, might continue to be a valid decree, at least for such a nominal sum as $15 per month, for the support of the children during their minority, yet when plaintiff and her husband were divorced, one portion of the obligation ceased, that to support the wife; when the son Rolla reached majority, a second portion ceased;

and when the son Pearl reached majority, the only obligation in any way still remaining, that for his support, ceased. And all of those facts appear from the record. Certainly, when the last child reached majority, all of the obligations of the deceased immediately ceased. In the language of Mr. Justice Marshall in *Boehler v. Boehler, supra,* ''The judgment needed no such modification.''

In pleading the judgment, the plaintiff must allege, in effect, and does allege, that it still remains in full force and effect. (34 C. J., p. 1094, sec. 1550, p. 1080, sec. 1526; *Brandt v. Meade,* 17 Ariz. 34, 148 Pac. 297; *Vogel v. Walker,* 3 Utah, 227, 2 Pac. 210; *Chaquette v. Ortet,* 60 Cal. 594.) She must and does allege that she was still the wife of deceased at his death. The law, in effect, requires her to allege that the minor children were minors at his death, or that all these facts continued during the time for which recovery is sought. And she should be required to prove each of these allegations.

The burden is upon the plaintiff to establish a valid, subsisting judgment, and the administratrix has as much right to rely upon the law which must be read into the Kootenai county judgment as she would upon a plea of payment. The judgment of divorce is an absolute bar to the portion of the judgment providing for the maintenance of the plaintiff. (*Harper v. Rooker,* 52 Ill. 370.)

There was no *res adjudicata* except as to facts existing at the time of the decree and the amount of the allowance based on those facts. The decree only became final as to instalments falling due while those facts continued. There can be no *res adjudicata* in the absence of a final decree. (*Kenner v. Kenner,* 139 Tenn. 211, 201 S. W. 779, L. R. A. 1918E, 587.) This, as a matter of fact, is, rather than an action upon that judgment, one for instalments thereunder, which became fixed, final and due, if at all, only by reason of the continuation of the facts upon which it was based, when and as they fell due. (34 C. J., p. 1082, sec. 1527.)

I cannot escape the reasoning of the court in *Evans v. Evans,* 116 Wash. 460, 199 Pac. 764, and other cases of like

40 Idaho—49

effect, as easily as does the majority opinion, nor do I think there is, in that case, any confusion of a duty to have a decree modified with actual modification. The confusion is rather in the majority opinion herein. It is not necessary to decide upon whom the burden rested to secure a modification of the decree. It needs no modification. All the state of facts supporting it had ceased to exist, and, to paraphrase the language of *Evans v. Evans, supra,* if plaintiff is permitted to prevail, not a portion, but all "of the recovery would be for a sum which the deceased was under no legal obligation to pay because of the fact that the children had attained their majority," and the plaintiff was no longer his "wife."

" . . . . A suit on a judgment may be defeated by proof of any facts showing that it would be against conscience to allow a recovery on the judgment . . . . " (34 C. J., p. 1090, sec. 1542.)

I cannot concur in the opinion that even though the marital relation had been dissolved, and the children come of age, there is no positive assurance that in a proceeding directly to modify the decree, relief would have been granted, or that the court could or would refuse to modify the decree until the payment of back instalments. It would be error for the court to refuse to vacate the decree for maintenance of either the wife or the children, when she had been divorced and they had reached their majority. Of such a case, *Prichard v. Prichard,* 189 Mo. App. 470, 176 S. W. 1124, said:

"In this case, the defendant's marital obligation to plaintiff was dissolved for her fault by a judgment of divorce rendered by a court of competent jurisdiction, in an action to which she appeared. She is necessarily bound by that judgment, and it put an end to defendant's duty to maintain her. (*Gilbert v. Gilbert,* 83 Ohio St. 265, 94 N. E. 421, 35 L. R. A., N. S., 521; *Skittletharpe v. Skittletharpe,* 130 N. C. 72, 76, 40 S. E. 851; *Bidwell v. Bidwell,* 139 N. C. 402, 409, 111 Am. St. Rep. 797, 52 S. E. 55, 2 L. R. A., N. S., 324.)"

The same case quoted with approval from *Weidman v. Weidman*, 57 Ohio St. 101, 48 N. E. 506. That case involved an action by a wife for alimony after a divorce had been granted, in which personal service had been had upon her. While denying the alimony upon that ground, the court said:

"The action for alimony is statutory, and by section 5702, Rev. Stats., it is provided that 'the wife may file her petition for alimony alone.' After an absolute divorce in an action in which the court had jurisdiction of both parties, she is no longer 'the wife,' and does not come within the provisions of the statute. Strictly speaking, the same is true in cases in which the divorce was obtained by the husband in an *ex parte* proceeding. . . . . "

In *Smith v. Superior Court*, 136 Cal. 17, 68 Pac. 100 (s. c., *Smith v. Smith*, 147 Cal. 143, 81 Pac. 411), the court, though referring to a judgment for maintenance, used the word "alimony," saying:

"It is conceded that a complete divorce will relieve petitioner from the judgment for alimony, because the plaintiff in the first suit would no longer be his wife."

It seems anomalous to give the Washington decree full force in this case in its effect upon property rights of plaintiff in the estate, under her first cause of action, but deny it any force in terminating the status of the parties as to the right to maintenance. Why give effect to the death of the deceased to terminate the maintenance, and not to the divorce which as effectively terminated it? Why is it that the death of deceased can be shown to terminate the maintenance decree, when it is only because his death terminates the marriage relation that it is given that effect, when the divorce has the same effect and is not permitted to be shown or given effect as terminating the decree?

In the language of *Harrison v. Harrison*, 20 Ala. 629, 56 Am. Dec. 227, cited in the main opinion:

" . . . . An end has been put to the relation of marriage, as effectually as would have resulted from the death of either of the parties, as a consequence, all duties and obligations

necessarily dependent upon the continuance of that relation immediately cease."

The decree of divorce as effectually terminated the decree for maintenance of the wife, and their arrival at majority that for support of the children, as would have the death of the deceased on the same date.

I am authorized to state that Mr. Chief Justice William A. Lee concurs with me in this opinion.