CATHERINE A. BENNETT, Appellee, v. I. H. TOMLINSON, Executor, Appellant.

NOVEMBER 13, 1928.

1076

*Claude R. Porter* and *I. H. Tomlinson*, for appellant.

*Stipp, Perry, Bannister & Starzinger* and *D. D. Holdoegel*, for appellee.

MORLING, J.—Decedent and claimant intermarried in Illinois, where they were then living, on April 2, 1885, and thereupon took up their matrimonial domicile in that state. They never had a matrimonial domicile elsewhere. On February 15, 1897, decedent filed in one of the circuit courts of Illinois a bill for divorce for desertion. Claimant answered, and also filed cross bill for separate maintenance. On March 19, 1897, decree in that cause was entered, sustaining the cross bill, and allowing claimant $144 per year, commencing March 19, 1897, payable in monthly installments in advance on the 19th day of each month until the further order of the court. About that time, decedent absconded from Illinois. On October 25, 1898, decree was rendered by the district court of Wapello County, Iowa, at the suit of decedent, divorcing him from claimant for desertion. The undisputed evidence is that ''no notice of any kind was served upon me [claimant] with regard to the divorce proceedings in Iowa. * * * I did not appear in this divorce proceeding.'' It is assumed in argument, though not shown in evidence, or by recital in the divorce decree, that the divorce was granted on notice by publication. Decedent remarried. When does not appear. Claimant never remarried, and never moved from Illinois. The undisputed evidence of claimant also is:

''Mr. Bennett made payments in accordance with the provisions of the separate maintenance decree, as set out in the exhibit, from 1908 to 1917. Haven't received any money since that time. These payments were all made by Mr. Bennett to me. He just put the money in envelopes.''

There was a daughter, 10 or 14 or 15 years old at the time the separate maintenance decree was rendered. Appellant suggests, but without evidence, that the money was for the daughter. This daughter, however, when the last payments were made, was more than 30 years old. The evidence shows that, at the time of this trial, she had been three times married. The ex-

hibit referred to, which is from September 1, 1907, only, to decedent's death, November 3, 1926, shows payment of various sums, ranging from $10 to $215, from 1908 to 1917, only two of the installments falling due during that period being credited as paid in full. Claimant testifies that she learned that decedent had got a divorce and remarried in Iowa five or six years after the proceedings in the Illinois court. "Mr. Bennett never told me in his letters that he had remarried again.. He told my daughter." This is all the evidence on the question of decedent's remarriage. There is no indication in the record here that decedent ever questioned or sought a modification of the decree for separate maintenance, or that claimant ever questioned the Iowa decree of divorce. The executor summarizes his reasons for asking a reversal: 1. That the separate maintenance decree was not a final judgment, under the full-faith-and-credit clause; is barred by the 20-year statute of limitations. 2. The Iowa decree "cut off and barred any further right of the claimant to any future payments of separate maintenance. 3. It was not alimony rendered in a decree of divorce, which might be called a continuing judgment, but it was merely an order temporary or interlocutory, for the payment of separate maintenance and support, based upon the fact that she was then his wife, and that she had the care, custody, and control of their minor child."

Judgment for separate maintenance is based on the relationship of husband and wife, and as to unmatured installments is ordinarily dependent upon the continuance of the marriage relation, as recognized by the law of the place where rendered. Judgment for permanent alimony is founded on the dissolution of the marriage. The law governing in the latter case, therefore, does not necessarily control in the other, though the analogy in many cases may be quite complete. The Iowa decree is for divorce only, and quasi *in rem*. 34 Corpus Juris 1176. In order for it to have validity, the *res*, the marriage relation or status, must have been within the jurisdiction of the Iowa court. Jurisdiction of the *res* depends on domicile, either the matrimonial domicile or the actual good-faith domicile of one of the parties within the state in which the divorce is granted. The evidence is undisputed that the only matrimonial domicile was in Illinois. Both parties were citizens of that state. The decree of divorce makes no reference whatever to the residence or

domicile of either of the parties. The only evidence on the subject is claimant's:

"I knew my husband had come to Iowa, but not when he left me, he didn't. It was five or six years after he left me. I couldn't tell the exact date. Q. So far as you know, he lived in Iowa until about the time he came back to Aledo and commenced the suit that has been offered here in evidence,—isn't that a fact? A. Well, I think he lived in Illinois before he tried that suit. I couldn't say that he came right back to Iowa after that was over. He skipped Illinois. He left Aledo, where the suit was had. I learned he was remarried quite a while after that."

The suit referred to was the suit for divorce, in which claimant got her decree for separate maintenance. On this evidence, neither the matrimonial nor claimant's domicile was removed from Illinois. 19 Corpus Juris 27, 32. We need not pause to discuss the question whether the presumption in favor of the jurisdiction of the Iowa court arising from the decree is, as to decedent's domicile, overcome. Claimant, a citizen of Illinois, not within the territorial jurisdiction of Iowa, was not served with notice within that jurisdiction, nor did she appear. That court had no jurisdiction *in personam* of her, and could not and did not undertake to determine her rights with respect to property, alimony, or the Illinois decree for separate maintenance. The Iowa decree, neither in Iowa nor elsewhere, affected more than the marriage status, and even as to that had no extraterritorial effect, other than that which might be given to it by comity. *Miller v. Miller*, 200 Iowa 1193; *Corkum v. Clark* (Mass.), 161 N. E. 912, 915. On the other hand, the judgment of the Illinois court was *in personam*, between parties within its jurisdiction, and for each installment, as it became due, was entitled to full faith and credit. (Case infra.) The Illinois court has never been asked to recognize the Iowa divorce, either by application to it for modification or otherwise. The Illinois decree became a final judgment for the recovery of each installment as the installments fell due, and claimant's right therein was fixed in each of them as it matured. The power of modification ceased as to any installment falling due before application for modification was made. *Sistare v. Sistare*, 218 U. S.

1 (54 L. Ed. 905); *Barber. v. Barber*, 21 How. (U. S.) 582; *Wagner v. Wagner*, 26 R. I. 27 (57 Atl. 1058). The full-faith-and-credit clause attached to such installments as they, without previous application for modification, matured. Idem. This court has repeatedly applied the doctrine of finality to such installments in alimony cases. *Delbridge v. Sears*, 179 Iowa 526; *Kell v. Kell*, 179 Iowa 647; *Matson v. Matson*, 186 Iowa 607. We are of the opinion that, under the facts of the case, this rule must be applied here. It was not compulsory for the state of Illinois and its courts to recognize the Iowa decree of divorce, even as to the marriage status, and that decree did not purport to fix rights of property or alimony of decedent and claimant, as between themselves. We said, in *Miller v. Miller*, 200 Iowa 1193, 1201:

"So far as the personal and property rights of the defendant spouse, as distinguished from her status, are concerned, courts of equity are not wanting either in power or ingenuity to fully protect them within their territorial jurisdiction, notwithstanding the dissolution of the marriage status by a foreign decree."

Had decedent applied to the Illinois court for a modification of the decree for separate maintenance, he doubtless would have been confronted with a suit or application for allowance of alimony. Even if the Illinois court had regarded the claimant as the guilty party, and the divorce as conclusive, nevertheless the law of Iowa that alimony might be allowed to the guilty party (*Blain v. Blain*, 200 Iowa 910; *Mitchell v. Mitchell*, 193 Iowa 153), might have been recognized and applied. The claimant might, notwithstanding the ex-parte decree of divorce, have sued for alimony, either in Iowa or in Illinois, if she had been able to find defendant there. 19 Corpus Juris 248; *Goldie v. Goldie*, 123 Iowa 175. Whether decedent would have had a defense, by reason of acquiescence, or otherwise, is not now for determination. There was here on the part of the decedent acquiescence in the continued force of the judgment for separate maintenance after the divorce.

The Iowa court never had or asserted jurisdiction *in personam* of the claimant, or to determine her rights of property or maintenance, or to alimony. The utmost extent to which the

decree of divorce would be recognized in Illinois would be, as a matter of comity, the dissolution of the marital relation. There was no adjudication of cause for the termination or modification of the existing judgment in Illinois *in personam* in favor of the claimant and against the defendant. There is little ground for even conjecturing that the Illinois court might have recognized the Iowa decree of divorce as sufficient reason for modifying its decree. Claimant had a valid, unmodified judgment *in personam* against decedent in the court of her domicile. Clearly, a decree such as that of the Iowa court could not terminate such a one as that in the Illinois court. *Dorey v. Dorey*, 248 Mass. 359 (142 N. E. 774) ; *Simonton v. Simonton*, 40 Ida. 751 (236 Pac. 863). In *McCullough v. McCullough*, 203 Mich. 288 (168 N. W. 929), relied upon by appellant, where a foreign decree for separate maintenance was held to be dissolved as to installments maturing in the future, by a decree of divorce obtained in Michigan, the defendant attempted to show that, on a date named, he obtained a decree dissolving the marriage. The particulars of the divorce proceedings and decree were in no wise referred to or questioned. The offer was assumed to be of a decree that would be binding, and did not appear to be of one whose force depended altogether upon comity. In *Harrison & Saunders v. Harrison*, 20 Ala. 629 (56 Am. Dec. 227, 230), relied upon in the *McCullough* case, and cited by appellant here, though the decree of divorce was obtained on publication, it was held that the husband and wife took up their domicile in Alabama. The wife returned to her former domicile, but this was held to have in no wise operated to change her domicile from Alabama. It was held that Alabama, in which the decree for divorce was rendered, was the wife's matrimonial, as well as her legal, domicile, and the decree was necessarily given full force in that state.

In *Simonton v. Simonton*, 40 Ida. 751 (236 Pac. 863, 869), there was a dissent, but the dissent assumed that decedent "and the plaintiff were divorced by a valid decree of the Washington court," and "when plaintiff and her husband were divorced, one portion of the obligation ceased,—that to support the wife." We are entitled to make no such assumption of validity or effect of the Iowa decree in the state of Illinois. In *Freet v. Holdorf*, 205 Iowa 1081, no judgment in favor of the wife in the state of her separate domicile was involved. Both parties had remar-

ried. There this court without question gave full effect, as it might, under the ruling in *Miller v. Miller*, 200 Iowa 1193, to the foreign decree of divorce. The language in the *Freet* case had reference to the facts in that case, not to those involved here.

The statute of limitations began to run against each installment only from the time it fell due. 34 Corpus Juris 1088;  *Kaiser v. Kaiser*, 213 Mich. 660 (181 N. W. 993); *Simonton v. Simonton*, 33 Ida. 255 (193 Pac. 386); *Cormana v. Naron*, 37 Ida. 482 (217 Pac. 597); *Arrington v. Arrington*, 127 N. C. 190 (37 S. E. 212).—*Affirmed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.