## BLOEDORN v. BLOEDORN.
### No. 6215.

United States Court of Appeals for the District of Columbia.

Decided Feb. 4, 1935.

Rehearing Denied March 11, 1935.

William C. Sullivan, of Washington, D. C., for appellant.

Crandal Mackey, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia in a maintenance suit, growing out of a matrimonial controversy that has dragged through the courts of the District and Virginia for nearly six years. The parties were married in the District of Columbia in July, 1910; the only matrimonial domicile they ever had was in the District of Columbia; and the only child of the union was born in the District of Columbia; yet the marriage has been dissolved by a Virginia court, where the husband sued the wife for absolute divorce on the ground of her desertion and abandonment. While appreciating the incongruity of this situation in fact, we must recognize its validity in law, under the faith and credit clause of the Constitution (Const. art. 4, § 1), and the statutory provisions and legal doctrines controlling the matter. The difficult remedy for this unwholesome condition may lie in a system of uniform divorce laws more liberal than the present statute of the District of Columbia.

With modern facilities of communication, even a busy physician, like the husband in this case, may be professionally available in Washington while legally resident in Virginia or Maryland, and the matrimonial law

of each of these three contiguous jurisdictions differs in important respects from each of the others.

The parties having lived together in Washington for eighteen years, then separated by a withdrawal of the husband from their place of abode in a removal which the wife pleads as a willful abandonment and a deliberate desertion, but which the husband justifies as a strategic retreat in self-defense.

After his withdrawal, the husband paid the wife $250 per month for the support of herself and their minor child until April, 1929, when she filed a bill in the Supreme Court of the District of Columbia praying for separate maintenance, alleging desertion in July, 1928, refusal to return, and inadequate support. He answered the bill, attacking his wife's conduct, justifying his own, setting forth his financial faculties, and expressing willingness to support his wife and child, but not on the scale demanded by her.

There the matter rested for two years, during which the parties lived apart, and during which the husband continued his monthly payments for the maintenance of wife and child.

In April, 1931, a decree was entered, by consent of the parties and without evidence, which required the husband to pay $275 per month for support of the wife and child; to maintain an existing insurance upon his life for the benefit of the child in the sum of $25,000; awarding custody of the child to the mother with right of visitation in the father; and enjoining each party from molestation of the other.

Four months later, and on July 1, 1931, the husband took up residence in Arlington county, Va.; and on October 31, 1932, he filed his bill in the circuit court for that county praying an absolute divorce on the ground of his wife's desertion in July, 1928, when she remained at home while he withdrew to Colorado, so that the same act, in which the controversy culminated, and which ended their life together, is pleaded by each spouse as desertion by the other.

The bill further charged the wife with constant nagging and discord seriously impairing the health of the husband, and with finally ordering him from their abode, which was in the residence of her mother, and refusing thereafter to live with him. Personal service of this bill was made upon the wife, who entered appearance by two counsel, filed an answer denying any mis-conduct on her part by nagging or otherwise, and charging her husband with many matrimonial misdemeanors from habitual discourtesy to repeated adultery, both included.

Thereafter the cause was referred to a master in chancery to ascertain and report whether the court had jurisdiction and whether a divorce should be granted.

The wife made no attack on the jurisdiction of the court or the bona fides of the husband's residence in Virginia, but appeared before the master in person and by counsel, testified herself in support of her pleadings, and offered other evidence to the extent of nearly 500 pages of type, including the pleadings and decree in her suit in the District of Columbia.

The cause was thereafter presented to the court by evidence and argument, the facts were found in favor of the husband, and a final decree of divorce a vinculo was entered on November 22, 1933, requiring the husband to pay $75 per month for support of the child, and allowing $600 to the wife for counsel fees upon her motion.

From this decree the wife sought an appeal to the Supreme Court of Appeals of Virginia, which was denied. Throughout this period, from the consent decree in the wife's suit in March, 1931, until the final decree in the husband's suit in November, 1933, the husband paid her $275 per month as required of him by the earlier decree, but in December, 1933, the month following his decree in Virginia, he paid the $75 as required by that decree, and no more.

Thereupon the wife filed a petition in her suit in the Supreme Court of the District of Columbia alleging a default of $200 in alimony then due her; praying a rule for its payment; and a judgment in contempt for continued refusal. The husband, or ex-husband, answered this petition by setting up the Virginia divorce proceedings and decree as of its own force vacating the decree for maintenance in the District of Columbia by dissolving the marriage, and, in the alternative, asking for a new decree vacating the order of maintenance because of the divorce.

Thereupon a motion was filed by the wife to strike out the answer to the rule; the matter was heard; the motion to strike was denied; the rule discharged; and from that decree we have this appeal.

The wife, on the present record, does not question here the jurisdiction of the Vir-

ginia court over the parties and the subject-matter; and she pressed no such question there.

■ But she contends that the Virginia decree cannot operate of its own force to extinguish her prior decree for maintenance, and that the decree here giving it that effect in respect to the alimony then past due was erroneous. The record reveals no indication of collusion between the parties, but contains ample evidence of collision. And in view of the husband's domicil in Virginia for the statutory period; personal service of process upon the wife; her appearance in the Virginia court in person and by counsel; her testimony and active participation in those proceedings in support of her counter charges; and her request and receipt of counsel fees, we are of opinion that the Virginia decree constitutes a valid divorce a vinculo, entitled to full faith and credit in the Supreme Court of the District of Columbia when there drawn in question. Cheever v. Wilson, 9 Wall. 108, 123, 19 L. Ed. 604; Cheely v. Clayton, 110 U. S. 701, 4 S. Ct. 328, 28 L. Ed. 298; Haddock v. Haddock, 201 U. S. 562, 570, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. Judicial notice of such a decree in a federal court must be requested, since it amounts to a dispensation from the production of evidence, and when so requested and assumed, it may be disputed. Wigmore Evidence, pars. 2567, 2568. It was open to the husband at any time after obtaining his decree in Virginia to bring it into the District court with a petition to vacate the decree for maintenance because of the subsequent dissolution of the marriage status it was intended to maintain. But this he did not do until a rule was laid upon him, when the question was presented by the wife's petition and the husband's answer, and as it is settled in this jurisdiction that vacation or modification of alimony operates only in futuro, the husband was not entitled to be relieved of any installments thereof due at the time of filing his answer. Biscayne Trust Co. v. American Security & Trust Co., 57 App. D. C. 251, 20 F.(2d) 267; Caffrey v. Caffrey, 55 App. D. C. 285, 4 F.(2d) 952; Phillips v. Kepler, 47 App. D. C. 384; Barber v. Barber, 21 How. 582, 16 L. Ed. 226; Sistare v. Sistare, 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905, 28 L. R. A. (N. S.) 1068, 20 Ann. Cas. 1061.

■ While the decree appealed from in form merely dismisses a motion and discharges a rule in respect of a small amount of alimony then accrued, in legal effect it operates to vacate the provision made for the wife by recognizing that she is no longer wife, because of the Virginia decree, and the Virginia law makes no provision for alimony to a wife against whom a divorce has been granted. Thompson v. Thompson, 226 U. S. 551, 33 S. Ct. 129, 57 L. Ed. 347. But the lump sum allowance for the wife included a provision for the daughter from month to month, which, in view of the peculiar circumstances, is not necessarily to be vacated or modified because the Virginia decree divorces her parents and allows $75 per month for the daughter, in the custody of her mother in the District of Columbia. Seeley v. Seeley, 30 App. D. C. 191, 12 Ann. Cas. 1058; Matter of Stewart, 77 Misc. 524, 137 N. Y. S. 202; In re Alderman, 157 N. C. 507, 73 S. E. 126, 39 L. R. A. (N. S.) 988. And this decree also awards what is perhaps the most valuable property right involved in the litigation to the person who is certainly the most innocent connected therewith, when it requires the father to maintain his life insurance for the benefit of his daughter. This requirement was made after the husband had set forth his faculties and claimed credit of $100 per month for the cost of this insurance in determining his net income out of which allowances should be made. This expense was therefore taken into the calculations of the court and the parties when the consent decree was entered, and is in the nature of a valuable consideration enuring to the husband in respect of this provision for his daughter.

Since the decree for maintenance proceeded by consent of parties in a competent court, it is both a contract and a judgment, open neither to direct appeal nor collateral attack, except in the court where it was made upon a proper showing of changed conditions. Pacific R. Co. v. Ketchum, 101 U. S. 289, 296, 25 L. Ed. 932; U. S. v. Babbitt, 104 U. S. 767, 26 L. Ed. 921; Nashville, C. & St. Louis Ry. Co. v. U. S., 113 U. S. 261, 266, 5 S. Ct. 460, 28 L. Ed. 971; Harding v. Harding, 198 U. S. 317, 25 S. Ct. 679, 49 L. Ed. 1066; Parish v. McGowan, 39 App. D. C. 184, 201; Ganss v. Goldenberg, 39 App. D. C. 597, 599; 2 Daniel Ch. Pr. 1576.

And at the time that decree was made that court had complete and exclusive jurisdiction of the matrimonial res and of all persons involved therein; neither the res nor the child had ever been out of that jurisdiction; and the child remained therein

throughout the litigation, while the pleadings in the Virginia cause sought no benefit or relief for her.

But the short and general language of the decree appealed from, by simply discharging the rule as of the date of the Virginia decree upon the husband's contentions, might be taken to extinguish all rights of the child under the maintenance decree, including her right to the insurance awarded to her by agreement of the parties with the sanction and co-operation of the court; and this with no hearing for the child either in the District of Columbia or in Virginia. Yet this consent decree is continuing by nature; was certainly valid and binding upon all parties when rendered; may be valid and binding as between the father and child now; and it is not to be extinguished by the decree of the Virginia court operating of its own force, or modified by the Supreme Court of the District of Columbia, except upon a showing which clearly takes into consideration all the rights of the child thereunder, including the insurance policy, and where she may be heard by a guardian ad litem. For while the Virginia decree may dissolve the relation of husband and wife, it cannot terminate the relation of parent and child, and since divorce does not avoid a policy of insurance in favor of a wife, Connecticut Mut. Life Insurance Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, a fortiori, it cannot operate to that effect against the infant child of a dissolved marriage, who has ever been a cherished ward of chancery. We cannot sanction this possibility of the decree, or conceive that it is required by the faith and credit clause of the Constitution, or that it was intended by the trial court.

And while some aspects of the opinion in Yarborough v. Yarborough, 290 U. S. 202, 54 S. Ct. 181, 78 L. Ed. 269, 90 A. L. R. 924, appear to look in another direction, the facts, the statutes, and the history of that case are thought to distinguish it from this.

The decree appealed from is therefore reversed, with costs, and the cause remanded with instructions to allow the alimony accrued up to the time of the filing of the husband's answer to the rule, and for such further proceedings as may be necessary to ascertain and protect the rights of the child under the consent decree. And since the proceedings on the petition to enforce were made necessary by the default of the husband, a counsel fee may be allowed in that behalf if the trial court shall deem it proper to do so.

Reversed and remanded.

## On Petition for Rehearing.

PER CURIAM.

Upon consideration of the petition of the appellant for a rehearing, for a modification of the opinion, and for a stay of the mandate in this cause, it is ordered that such rehearing be denied, that the mandate be stayed for thirty days, and the opinion is amplified by stating that it was the intention of the court that Mrs. Bloedorn should be allowed maintenance under the decree of the Supreme Court of the District of Columbia up to the date of the filing of the husband's answer to the rule in the proceedings to enforce that decree, but no longer.

The decree appealed from is therefore reversed, with costs, and the cause remanded with instructions to allow the maintenance up to the time of the filing of the husband's answer to the rule, but not thereafter, and for such further proceedings as may be deemed necessary to ascertain and protect all rights of the child in the premises including her rights under the consent decree.