227 P.2d 201 (1951)
SUMMERS
v.
DISTRICT COURT, SECOND DISTRICT, WASHOE COUNTY et al.
No. 3645
Supreme Court of Nevada
February 8, 1951.
*202 A.P. Johnson, of Reno, for Petitioner.
Griswold, Reinhart & Vargas, of Reno, for Respondent.
MERRILL, Justice.
This is an original proceeding in certiorari to review action of respondent court in ordering and issuing a writ designated a writ of ne exeat and in denying motion to dismiss the writ. The essential question involved is the court's authority under the facts of the case, to order civil arrest without hearing, notice or bond.
On October 20, 1950, an action was brought before said court by Estelle Summers as plaintiff against Jack Summers (petitioner herein) as defendant. The complaint in that action alleges that the parties are husband and wife; that on April 24, 1947, a judgment of separation was entered by the Supreme Court of the State of New York in favor of Estelle Summers and against Jack Summers, which judgment directed that Summers pay to his wife $45 a week for her maintenance and support and $40 a week for the support of the son of the parties; that as of October 9, 1950, Summers was in arrears in payment under that order in the sum of $3,105. The complaint prayed: (1) judgment for arrears; (2) award of support and maintenance in accordance with the New York judgment, "and that such judgment entered by this Court shall be decreed to be enforcible as similar orders or judgments of this Court for separate maintenance under the statutes of the State of Nevada"; (3) "or, that the judgment of April 24, 1947, by the Supreme Court of the State of New York, aforesaid, be established in this State as a foreign judgment of separate maintenance, * * * and that said judgment shall be entitled to be enforced in equity by any appropriate proceeding;".
On the day on which suit was commenced, the plaintiff, Estelle Summers, filed a petition in response to which a writ designated writ of ne exeat was, on October 20, 1950, issued pursuant to order of respondent court. The writ, signed by respondent judge, was issued under seal of court and directed to the sheriff of Washoe County, Nevada. It provided:
"Whereas, Estelle Summers has presented a petition to this Court, supported by her affidavit, and based upon a Complaint filed by her, showing that Jack Summers is now greatly in arrear in payments required to be made to her under an order of the Supreme Court of the State of New York for the support and maintenance of herself and their son, Robert Summers, and that she and the son are in great need of the payments required by said order, and that Jack Summers is likely to leave the jurisdiction of this Court and avoid process; and it appearing to this Court that good cause exists for granting the prayer of this petition;
"You are hereby commanded to arrest Jack Summers, defendant herein, without delay, and to confine him in the Washoe County Jail, unless he give sufficient security or bail in the sum of $3500.00 that he will not leave the State of Nevada or go beyond the jurisdiction of this Court without leave of this Court."
In directing issuance of the writ respondent court also ordered that Jack Summers "shall not sell, encumber or otherwise dispose of or place beyond his possession and the jurisdiction of this court any of or all his property located in the State of Nevada."
Pursuant to the writ and order petitioner was placed under arrest by the sheriff of Washoe County. Two days later *203 he gave bail as provided and was released. An automobile in the possession of petitioner was taken into possession by the sheriff of Washoe County.
On November 17, 1950, pursuant to notice, petitioner moved respondent court for an order vacating and dismissing both the writ and the restraining order and for an order directing return of property and exoneration of bond. The motion was denied by respondent court.
It is contended by petitioner that no authority exists under the law of this state for the issuance of such a writ; that respondents in so acting exceeded their jurisdiction.
The writ of ne exeat originally in England was a high prerogative writ issued for state or political purposes to forbid a subject leaving the realm. It proceeded upon the assumption that since every man was bound to defend the king and his realm, the king might, as crown prerogative, command any man not to leave the realm. While first confined to state affairs, the writ was later extended to private and civil matters.
In the United States the writ is not regarded as a prerogative writ but rather as ordinary process of a court of equity issued, on the impending departure of a person from the jurisdiction of the court with intent to evade it, to restrain such person until he has given bail to perform the court's decree and commanding his arrest and detention if he fails to furnish such bail. 65 C.J.S., Ne Exeat, sec. 1, P. 275; 38 Am.Jur. 618, Ne Exeat, sec. 1; 118 Am.St.Rep. 989.
Chap. 18 of the civil practice act of this state, approved March 17, 1911, provides for arrest and bail in civil actions. The first section of this chapter, being sec. 8643, N.C.L. 1929, provides as follows: "No person shall be arrested in a civil action except as prescribed by this act." Under similar code provisions it has uniformly been held that the common law writ of ne exeat has been abolished by statutory substitution. Ex Parte Harker, 49 Cal. 465; Cable v. Alvord, 27 Ohio St. 654.
Such is the judgment of this court. If the restraint provided by the writ is to be justified it must be by virtue of our express statutory provisions and not by virtue of the common law. If it be so justified, however, it will not concern this court that the order for such restraint purported to take the form of a common law writ now obsolete under our statutes. It is the authority of respondent court to command such restraint with which we are concerned and not the designation which it has given to its command. We proceed, therefore, to an examination of our statutes.
It is not contended that issuance of the writ is supported by our civil code since no undertaking was provided as there required. Respondents do contend, however, that the provisions of our statutes relative to divorce and separate maintenance give power to the court to take the precise steps which have been taken here.
Sec. 9474, N.C.L. 1929, being sec. 7 of the act relating to actions for separate maintenance provides in part as follows: "In all cases commenced hereunder, the proceedings and practice shall be the same, as nearly as may be, as is now or hereafter may be provided in actions for divorce; * * *." We may, therefore, consider our statutes relative to divorce practice.
Sec. 9463, N.C.L. 1929, Supp. 1943-1949, provides in part as follows: "In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable, * * * If after the filing of the complaint, it shall be made to appear probable to the court or the judge in vacation, that either party is about to do any act that would defeat or render less effectual any order which the court might ultimately make concerning the property or pecuniary interests, an order shall be made for the prevention thereof, to be enforced as such preliminary orders are enforced respecting children." Sec. 9462, N.C.L. 1929, Supp. 1943-1949 (with reference to orders respecting children) provides in part as follows: "* * * and all such orders may be enforced, and made effectual, by attachment, commitment, and requiring security for obedience thereto, or by other means, *204 according to the usages of courts, and to the circumstances of the case * * *."
Had this been an original suit for separate maintenance and had it been made to appear probable to the lower court that the defendant was about to leave the State of Nevada and remain beyond the court's jurisdiction and that such action on his part would defeat or render less effectual any order which the court might ultimately make respecting maintenance, then, under sec. 9463, the court might enter an order preventing the defendant from leaving the state and, under sec. 9462 enforce that order by commitment. Under the quoted sections and the extremely broad powers there conferred such a conclusion appears inescapable.
Such was the action taken by respondent court and such, we must presume, were the determinations which prompted its action. As the writ itself shows upon its face, an affidavit was filed by the plaintiff wife in support of her petition, which affidavit dealt with her necessitous condition and the probability of the husband's leaving the state.
Petitioner contends that this affidavit was insufficient in that it dealt in conclusions of the affiant without factual support. While undoubtedly replete with matters of conclusion and conjecture in regard to her husband's intent to leave the State of Nevada, the affidavit still does state facts in support thereof. It appears that petitioner husband has made four different applications for reduction of maintenance, each of which was denied; that the New York court in one of its decisions "branded Jack Summers as a conniver and as a conspirator who sought to falsify his books and deliberately reduce his earning powers solely for the purpose of modifying the judgment;" that in December, 1949, the husband left the State of New York; that he returned in April, 1950, to apply for reduction of support payments, and when his application was denied, once again left the state; that affiant wife did not thereafter hear from him until served with summons in a Nevada action for divorce on September 28, 1950; that the husband had threatened affiant wife "time and again" that he would break her physically and mentally and "do anything in his power to foil the decree of the courts of the state of New York or any other court."
It may with some justification be contended that such factual showing, insofar as positively establishing that the husband was about to leave the State of Nevada, falls somewhat short of satisfactory proof. Proof, however, is not required. By express statutory provision it is not the positive but the probable which must form the basis for application of the remedy.
"Probable," according to Webster's New International Dictionary (Second Edition) means "having more evidence for than against; supported by evidence strong enough to establish presumption, but not proof, of its truth; * * *." Courts have frequently accepted Webster as authority in definition of this word, as reference to Words and Phrases will demonstrate.
In Ex Parte McCarty, 140 Cal. App. 473, 35 P.2d 568, the court defined the word probable as "having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." The court then states: "It will suffice for us to state that we have carefully examined the record before us, and we are of the opinion that there is sufficient evidence to indicate, with reasonable probability, the probable guilt of petitioner, although it should be clearly understood that this court is not passing on, nor endeavoring to pass upon, the question of the sufficiency of the evidence to support a verdict of guilty."
It cannot here be said that there was nothing to support the determination of respondent court that it was probable that the husband was about to leave the state. We must conclude, therefore, that had the action before respondent court been an original suit for separate maintenance the court would have been acting within its jurisdictional powers in proceeding as it did.
We are left with the question whether the situation is altered by virtue of the fact that this is not an original suit for *205 separate maintenance but a suit to establish the judgment of the New York court as the foreign judgment of respondent court.
It is by now well settled that the New York judgment, once finally established as the foreign judgment of a court of this state, would be entitled to enforcement in the same manner as an original Nevada judgment for maintenance and support. The right of enforcement would not be limited to execution, but would include enforcement by contempt as well. Creager v. Superior Court, 126 Cal. App. 280, 14 P.2d 552; Shibley v. Shibley, 181 Wash. 166, 42 P.2d 446, 97 A.L.R. 1191; Cousineau v. Cousineau, 155 Or. 184, 63 P.2d 897, 109 A.L.R. 643.
It is emphasized by petitioner that in the instant case the New York judgment has not yet been established as the judgment of the Nevada court and is not yet susceptible of enforcement as such; that enforcement provisions of our statutes apply to Nevada orders and judgments and not to those of some other state; that to permit acts of enforcement at this stage of the proceedings would in effect be to extend the jurisdiction of the New York court beyond the boundaries of that state and into the State of Nevada.
The provisions of sec. 9463 are not, however, for enforcement of final judgments or even of interlocutory orders upon the parties. The relief provided looks not to orders already made but to orders to be made in the future. Essentially it is a remedy of protection and prevention rather than of enforcement.
The final question, therefore, is whether such provisional remedies (as well as the ultimate right of enforcement by contempt) are available in an action to establish a foreign judgment of separate maintenance. In the view of this court, they are.
As has been stated, the judgment when rendered is identical with an original Nevada judgment from the point of its right to enforcement. Suit for such judgment takes on the character of the judgment it seeks. From the point of its right to provisional remedies, its character must, therefore, be regarded as identical with that of an original suit for maintenance.
It is held that respondent court, under the facts of this case, acted within its jurisdictional powers in making the orders contained in the writ in question, in entering its restraining order and in denying motion to vacate and dismiss. Any attack upon the propriety of its action must go not to its jurisdiction but to justification of the manner in which it proceeded in the exercise of its discretionary powers. Such matters are beyond the scope of our considerations upon certiorari and, it is emphasized, are beyond the scope of this opinion.
In anticipation that this holding as precedent may otherwise become far reaching, it must be recognized that the remedy of arrest as a preventive measure is an extreme one. The legislative authorization of such a remedy based upon probability is an extraordinary grant of power to the courts and carries with it extraordinary judicial responsibilities. The extensive discretion so granted assumes the highest of judicial wisdom and, accordingly, demands the highest degree of consideration in its exercise.
The action of respondents is affirmed with costs.
BADT, C.J., and EATHER, J., concur.