ESTELLE SUMMERS, Appellant *v.* JACK
SUMMERS, Respondent.

No. 3687

March 12, 1952.                    241 P.2d 1097.

*Morley Griswold* and *George L. Vargas,* of Reno, for
Appellant.

*Axel P. Johnson,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

We are here confronted with the question whether in a suit in Nevada, by a wife, upon a New York judgment for separate maintenance, the provisions thereof may

extend through and beyond a subsequent divorce decree obtained by the husband in Nevada on substituted service.

The Supreme Court of New York, on April 24, 1947, on personal service, granted the wife a decree of separate maintenance against the husband and thereafter denied the husband's motion to modify it. The husband subsequently sued for divorce in Nevada and obtained a default judgment October 30, 1950 on substituted service. The trial court was not apprised of the New York judgment. The wife's suit in Nevada to establish the New York judgment was filed October 9, 1950 and personal service obtained. It was lodged in a different department of the same court in the same county. Judgment on the New York decree was entered in her favor on July 10, 1951 for $2,976.85, being figured on the New York judgment up to the date of the husband's Nevada divorce decree, but denying judgment for installments accruing after such decree. Her appeal is based upon the contention that she is entitled to the full amount accrued under the New York decree, including sums accruing after the husband's divorce decree. She asserts that under the full faith and credit clause, the New York decree must be recognized and enforced beyond the date of the husband's subsequent divorce decree, and that the case of Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561, is controlling.

Respondent says that he has no quarrel with the Estin case, but that it does not apply. He relies upon Herrick v. Herrick, 55 Nev. 59, 25 P.2d 378, to the effect that in Nevada there is no force to the separate maintenance order subsequent to the entry of the divorce decree, and refers to numerous cases from other jurisdictions which have reached the same conclusion. As many other states have held contra. See cases cited in the prevailing and dissenting opinions in Rodda v. Rodda, 185 Ore. 140, 200 P.2d 616, 202 P.2d 638, and in Simonton v. Simonton, 40 Ida. 751, 236 P. 863, 42 A.L.R. 1363, and annotation id. 1375. We simply accept the fact at

this point that Nevada follows the rule that a separate maintenance decree does not survive divorce but that New York follows the contrary rule that a separate maintenance decree does survive a subsequent divorce. Estin v. Estin, supra.[1] See also Estin v. Estin, 296 N.Y. 308, 73 N.E.2d 113. In the present case the Nevada divorce decree so far as it determined the marital status of the parties is not questioned. Williams v. North Carolina, 317 U.S. 287, 87 L.Ed. 279, 63 S.Ct. 207, 143 A.L.R. 1273.

It would appear that the question is a new one in this state. It was virtually conceded in the trial court that the wife was entitled to her judgment for $2,976.85, the amount accrued under the New York separate maintenance decree up to the date of the Nevada divorce. Appellant claims that the *full faith and credit clause*[2] carries it beyond the divorce, while respondent maintains that the question is merely one of *comity*. He insists that if the Nevada courts would not recognize a separate maintenance decree, even of its own courts, extending beyond a divorce, comity does not compel Nevada courts to recognize a contrary situation growing out of a New York decree.

(1) We are confronted with a preliminary question.

[1] Mr. Justice Douglas, speaking for the majority of the court, so construed the holding of the New York court. Mr. Justice Jackson, dissenting, assumed New York law to be otherwise if the subsequent divorce decree were a New York decree, and Mr. Justice Frankfurter, also dissenting, felt that New York had not spoken "with ascertainable clarity" as to whether the subsequent divorce decree would terminate support. [334 U.S. 541, 68 S.Ct. 1220.]

[2] That clause directs that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State" and provides that "Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." By the act of May 26, 1790, chap. 11, 1 Stats. 122, as amended, 28 U.S.C.A., sec. 1738, congress provided that the "records and judicial proceedings" of the courts of any state "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

Respondent contends that, assuming for the moment that the New York support decree would survive the subsequent Nevada divorce, the New York award of $45 a week to the wife and $40 a week for the support of the child is not such a final judgment of the Supreme Court of New York as must be accorded full faith and credit as to accrued installments.

This contention must be rejected under authority of Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905. That decision was based on Barber v. Barber, 21 How. (U.S.) 582, 16 L.Ed. 226, against the contention that the Barber case had been overruled by Lynde v. Lynde, 181 U.S. 183, 45 L.Ed. 810, 21 S.Ct. 555. Quoting the Barber case, with reference to the nature and character of a decree of separation and for alimony, and the operation and effect upon such decree as to past-due installments, of the full faith and credit clause, the court held the same to be a judgment of record to be received as such by other courts, and to be carried into judgment in any other state, "to have there the same binding force that it has in the state in which it was originally given." It was held to be error for a Connecticut court to refuse to enforce a prior New York decree to the extent of accrued unpaid alimony payments as being in conflict with the full faith and credit clause.

(2) In conflicts between contrary state policies such as those here involved and necessitating the application of the full faith and credit clause of the federal constitution, the law as pronounced by the Supreme Court of the United States is controlling. Milwaukee County v. White Co. 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220. In Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 1218, 92 L.Ed. 1561, the wife obtained a New York separation decree and support order in an action in which the husband appeared. Thereafter the husband established his residence in Nevada and obtained a default decree of divorce upon constructive service, the wife not appearing.

When she subsequently, in New York, sought enforcement of accrued payments under the New York support order, the husband asserted the Nevada decree as a defense. The supreme court recognized the divisible nature of the Nevada decree, effective as determining the marital status, but without effect upon the New York support order. The court said: .

"But the question is whether Nevada could under any circumstances adjudicate rights of respondent under the New York judgment when she was not personally served or did not appear in the proceeding. Bassett v. Bassett 9 Cir.Nev., 141 F.2d 954, held that Nevada could not. We agree with that view.

"The New York judgment is a property interest of respondent, created by New York in a proceeding in which both parties were present. It imposed obligations on petitioner and granted rights to respondent. The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing. Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations. \* \* \*

"\* \* \* The Nevada decree that is said to wipe out respondent's claim for alimony under the New York judgment is nothing less than an attempt by Nevada to restrain respondent from asserting her claim under that judgment. That is an attempt to exercise an in personam jurisdiction over a person not before the court. That may not be done. Since Nevada had no power to adjudicate respondent's rights in the New York judgment, New York need not give full faith and credit to that phase of Nevada's judgment. A judgment of a court having no jurisdiction to render it is not entitled to the full faith and credit which the Constitution and statute of the United States demand."

Mr. Justice Jackson, in dissenting, scoffs at the idea that by limiting the effect of the Nevada decree to the

personal status of the parties *full* faith and credit is accorded thereto. He refers to the majority opinion as a "Solomon-like conclusion that the Nevada decree is half good and half bad under the full faith and credit clause." The majority opinion however, based upon the conclusion that Nevada had no jurisdiction on substituted service to alter the wife's rights in the New York judgment, also shows that the conclusion reached "accommodates the interests of both Nevada and New York in this broken marriage by restricting each State to the matters of her dominant concern." The court definitely agreed with the view expressed in Bassett v. Bassett 9 Cir.Nev., 141 F.2d 954, which in turn followed Durlacher v. Durlacher, 9 Cir.Nev., 123 F.2d 70, 72. In the latter case, very similar to the present situation, with reference to the husband's attempt to set up his Nevada divorce in defense of the wife's action in the United States district court for the district of Nevada to collect alimony awarded by a New York court under a prior decree of separation and maintenance, the circuit court of appeals for this circuit said:

"The Supreme Court has repeatedly held that under the full faith and credit clause of the Constitution (extended by the statute to the court below), a judgment of a sister state must be enforced, even though the cause of action upon which the judgment is based is repugnant to the law of the state requested to enforce it."

Under Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039, relied upon as a leading case since the opinion was rendered in 1908 and approved so recently as in Hughes v. Fetter, 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212, decided in June, 1951, the New York separation and award decree cannot be impeached in this court without violating the full faith and credit clause of the federal constitution. Fauntleroy v. Lum, under its facts, presented a stronger case than is presented here.

There, residents of Mississippi entered into a contract prohibited by the Mississippi statutes concerning gambling in futures, which statutes inhibited the Mississippi courts from giving effect to any contract made in violation thereof. The parties to the contract submitted their differences to arbitration in Mississippi and the one in whose favor the award was made first sued unsuccessfully in Mississippi upon the award. He thereafter sued in Missouri and succeeded in getting personal service on the defendant Mississippi citizen in Missouri. The Missouri court rejected the defendant's proffered evidence as to the illegal and criminal nature of the transaction under Mississippi law and a judgment was entered for the plaintiff, whose assignee sued on the Missouri judgment in Mississippi, where the defendant set up the facts and the prohibitory statutes. The Supreme Court of Mississippi held that the Missouri judgment was not required under the full faith and credit clause to be enforced in Mississippi, but the United States supreme court, speaking through Mr. Justice Holmes, reversed the judgment and held that Mississippi could not go beyond the Missouri judgment. It held that the Missouri judgment "should have the same credit, validity and effect in every other court in the United States which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon *in such state, and none others,* could be pleaded in any other court in the United States." [210 U.S. 230, 28 S.Ct. 643.] (Emphasis supplied.) This is the identical rule pronounced by Chief Justice Marshall in Hampton v. M'Connel, 3 Wheat. (U.S.) 234, 4 L.Ed. 378. The majority opinion in Fauntleroy v. Lum rejected the reasoning (more potent than that of respondent herein) of a vigorous dissenting opinion by Mr. Justice White, with whom Mr. Justice Harlan, Mr. Justice McKenna, and Mr. Justice Day joined, to the effect that this prevented Mississippi from the enforcement of laws enacted under its police powers. See, also, Hughes v. Fetter, 341 U.S.

609, 71 S.Ct. 980, 95 L.Ed. 1212; Milwaukee County v. White Co., 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220. In the last-named case, referring to an action on the judgment of a foreign state, the court said: "Recovery upon it can be resisted only on the grounds that the court which rendered it was without jurisdiction * * * or that it has ceased to be obligatory because of payment or other discharge * * *."[3]

Respondent relies strongly upon Rodda v. Rodda 185 Ore. 140, 200 P.2d 616, 202 P.2d 638, which reviews the Estin case and many other cases dealing with a similar subject matter. In that case the wife had obtained an Oregon support order. Thereafter the husband obtained a Nevada divorce concededly valid as terminating the marital relation. On the strength of the Nevada divorce he moved the Oregon court for termination of the support provisions of the separate maintenance decree. Holding that the policy of Oregon is that the support provisions subsist only during the relationship of the parties as husband and wife, the Supreme Court of Oregon affirmed the judgment of the trial court terminating the support order. No matter how conclusive the Rodda case might be if we were considering an Oregon separate maintenance decree, it remains that New York has established the contrary policy. The Oregon court recognized this in saying:

"We do not inquire whether the Nevada divorce decree of its own force terminates the Oregon decree, for the Supreme Court of the United States has held in the Estin case that it cannot; but we must determine whether, *under Oregon law*, the former husband is still obligated to support his former wife under that decree, notwithstanding the marriage relation has come to an end." (Emphasis supplied.) [185 Ore. 140, 200 P.2d 620.]

Respondent relies upon Harrison v. Harrison, 20 Ala.

[3]It is unnecessary to consider other exceptions, as where there is a cause of action for which the state of the forum has not provided a court, or possibly where the judgment was procured by fraud.

629, 56 Am.Dec. 227; McCullough v. McCullough, 203 Mich. 288, 168 N.W. 929; Shaw v. Shaw, 332 Ill.App. 442, 75 N.E.2d 411; Rosa v. Rosa, 296 Mass. 271, 5 N.E.2d 417; and Bloedorn v. Bloedorn, 64 App. D.C. 199, 76 F.2d 812, as establishing the proposition that a decree for separate maintenance cannot survive a subsequent decree of divorce. We have no quarrel with that proposition. It is the rule in this state. Most of these cases do not touch the question as to whether the subsequent divorce, granted on substituted service, effective as to termination of the marital relationship, can be effective as terminating a prior separate maintenance decree entered in a state holding that separate maintenance survives divorce and which has made its judgment with personal jurisdiction of the parties. These cases were all discussed in the prevailing opinion of the court by Lusk, J., in Rodda v. Rodda, supra. The facts in Harrison v. Harrison, supra, are indeed similar to those in the instant case. It was decided in 1852. Insofar as it reached a different result than that pronounced in the Estin case, we must decline to follow it. The question for our determination remains that of according full faith and credit to the New York decree obtained by Mrs. Summers, and on that federal constitutional question the holding of the United States supreme court in Estin v. Estin and Fauntleroy v. Lum must control us. The California and other cases cited by respondent meet the same fate. Esenwein v. Commonwealth of Pennsylvania, 325 U.S. 279, 65 S.Ct. 1118, 89 L.Ed. 1608, 157 A.L.R. 1396, relied upon by respondent, was likewise emphasized in the dissenting opinion of Mr. Justice Frankfurter in the Estin case, but, like the Rodda case, it simply illustrates what the result might be if the prior separate maintenance decree is rendered in a state whose public policy terminates such decree by any valid divorce.

Respondent sees an anomaly in Nevada's policy of

terminating the effects of one of its own separate maintenance decrees by a subsequent divorce, while at the same time being compelled, in its own courts, to recognize the survival of a foreign separate maintenance decree. Respondent argues: "If, under the decision in the Estin case, the New York court is not required to give full faith and credit to the Nevada decree, and to the Nevada statute, then, by the same logic and applying the same legal principles, Nevada is not required to give full faith and credit to the New York decree." But this is based upon a false premise. New York, contrary to its own policy, must give full faith and credit to that part of the Nevada decree which terminates the marital relation. Estin v. Estin, supra; Williams v. North Carolina, supra. Nevada, contrary to its own policy, must likewise give full faith and credit to the continuing effect of New York's separate maintenance decree. Subject to considerations arising out of the jurisdiction of the court over the respective parties, and other possible limitations, this is the inevitable result of the full faith and credit clause which substituted for the earlier principles of comity between the states (based on their status as independent sovereigns) a requirement that each state submit even to the hostile policies of another state when reflected in the latter's judgments duly rendered. Estin v. Estin, supra. See also annotation to Hughes v. Fetter, supra, appearing in 95 L.Ed. 1221; Williams v. North Carolina, supra.

It is clear that the judgment of the lower court limiting recovery under the New York decree to the period prior to the Nevada divorce and refusing recognition to the New York decree as to installments accruing after the Nevada divorce violated the constitutional requirement to accord the New York decree full faith and credit in this state.

(3) The New York separation decree awarded the

custody of the minor child of the parties to the wife and ordered the husband to pay $40 a week for its support. Pursuant thereto the residence and domicile of the minor child remained that of the mother in the state of New York. The district court of Nevada in granting the husband a divorce, upon substituted service, made no attempt to disturb the award of custody of the minor child to the wife, but entered an order that the husband pay $25 per week for the support of such minor child. This judgment, as noted, was based upon substituted service. The court below in the present action found that the husband had complied with such requirements of the divorce decree and, in effect, held that nothing further was required of him despite the $40 weekly payments required by the New York decree. What we have said above applies a fortiori to this phase of the appeal. The learned trial court was in error in thus attempting to modify the effect of the New York decree with reference to the required payments for the support of the child, basing its order upon the supposed effect of the Nevada divorce decree.

(4). Appellant wife also assigns as error the court's dismissal of her motion for an order of contempt and for security. In her brief she devotes four lines to the assertion that this was an abuse of discretion, and oral argument did not touch the point. In considering this question it is to be observed that the wife's complaint sought alternative remedies from the court. The first was for a judgment based upon the New York judgment for the accrued sums due and the continued payment of the sums ordered by the New York court. The second alternative sought the establishment of the New York judgment as the judgment of the Nevada court enforcible as similar orders or judgments of this court for separate maintenance under our statutes. The court granted the first alternative sought, but limited it to the time ante the divorce, and entered no judgment on the alternative prayer.

The wife's notice of appeal from the judgment and from the order denying her motion for new trial specifically states: "Plaintiff does not appeal from the judgment of the court granting to plaintiff $2976.85 [the amount accrued under the New York judgment up to the date of the Nevada divorce] but does appeal from the court's refusal to grant judgment above that amount to the extent of plaintiff's claim [including the sums accruing after the date of the Nevada divorce]." No error is assigned in the court's failure to grant such alternative relief. Accordingly that phase of the matter considered in Summers v. District Court, Washoe County, 68 Nev. 99, 227 P.2d 201, and involved in plaintiff's prayer for the alternative relief of establishing the New York judgment as a judgment of separate maintenance of this court enforcible by contempt and by equitable remedies is not before us.

The judgment and order denying motion for new trial are hereby reversed, and the case is remanded to the district court with instructions to enter judgment for plaintiff for the full amount called for by the New York decree, subject to credit for payments made by or on behalf of defendant as shown by the pleadings and proof. Appellant is allowed her costs.

EATHER and MERRILL, JJ., concur.

ORDER DENYING PETITION FOR REHEARING
March 31, 1952.

*Per Curiam:*

**Rehearing denied.**